James TIEDEMAN & Mary Tiedeman, h/w, Appellants,

v.

CITY OF PHILADELPHIA, Jane Hix, Michael Gordon, Steven Levy and Barry Dickman.

Commonwealth Court of Pennsylvania.

Argued May 17, 1999.

Decided June 22, 1999.

Paul J. Stacom, Philadelphia, for appellant.

Alan C. Ostrow, Philadelphia, for appellee.

Before McGINLEY, J., FRIEDMAN, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

James and Mary Tiedeman (the Tiedemans) appeal from the August 11, 1998 order of the Court of Common Pleas of Philadelphia County (trial court) granting Defendants'[1] preliminary objections to their complaint and dismissing it with prejudice. We affirm.

On June 4, 1998, the Tiedemans filed an action at law against Defendants seeking monetary damages for injuries sustained by Mr. Tiedeman at the hands of City employee Charles Clark[2] while on City-

---

1. Defendants are the City of Philadelphia (City); Jane Hix, Chief of Staff of the City Health Department; Michael Gordon, employee of the City; Steven Levy, Building Maintenance Supervisor for the City Health Department; and Barry Dickman, Executive Assistant of the Medical Examiner's Office for the City Health Department.

2. Mr. Clark is not a defendant in this lawsuit.

owned property. The Tiedemans' complaint alleged the following. Mr. Tiedeman was employed by Dennis F. Casey, Inc., a company that contracted with the City and the City's Health Department to perform maintenance on heating and air conditioning units in a City-owned building that houses the Health Department and the Medical Examiner's Office. Prior to January 22, 1997, Mr. Tiedeman, while lawfully present on the premises, was accosted, harassed, confronted and threatened by Clark. (Reproduced Record "R.R." 3a). Mr. Tiedeman informed Defendants Hix, Gordon, Levy and Dickman of Clark's behavior and requested relief. (R.R. 4a).

On or about January 22, 1997, Mr. Tiedeman was working inside the Health Department/Medical Examiner's building, when Clark shoved and threatened him. (R.R. 5a). Upon completing his work, Mr. Tiedeman, his partner, and Defendant Dickman exited the premises. While Mr. Tiedeman was trying to get into his vehicle, Clark blocked the door, pulled Mr. Tiedeman out of the vehicle, and slammed Mr. Tiedeman against a concrete abutment. (*Id.*) A witness was able to pull Clark off of Mr. Tiedeman. However, Clark again attacked Tiedeman, this time from behind. Clark pushed Mr. Tiedeman into his vehicle, and Mr. Tiedeman was then able to drive away from the scene.

The Tiedemans' complaint was based in negligence, generally alleging that Defendants were negligent in failing to properly supervise and control their employee, Clark.[3] Thereafter, on June 29, 1998, Defendants filed preliminary objections in opposition to the Tiedemans' complaint. In their preliminary objections, Defendants raised the affirmative defense of governmental immunity under what is commonly referred to as the Political Subdivision Tort Claims Act (the Act), 42 Pa.C.S. §§ 8541–8564.[4] On July 27, 1998, the Tiedemans filed an answer to Defendants' preliminary objections, asserting that their cause of action fell within the real property exception found in Section 8542(b)(3) of the Act, 42 Pa.C.S. § 8542(b)(3).

By order dated August 11, 1998, the trial court granted Defendants' preliminary objections and dismissed the Tiedemans' complaint with prejudice. This appeal followed.

■■■ The sole issue presented for our review is whether the trial court erred in concluding that the real property exception to governmental immunity found in Section 8542(b)(3) of the Act, 42 Pa.C.S. § 8542(b)(3), was not applicable. Our scope of review is to determine whether, on the facts alleged, the law states with certainty that no recovery is possible. *Hawks by Hawks v. Livermore*, 157 Pa. Cmwlth. 243, 629 A.2d 270, 271 n. 3 (1993).

---

**3.** The specific allegations of negligence included: 1) failing to regard the rights and safety of Mr. Tiedeman; b) failing to control, supervise and maintain Clark's activities; c) failing to warn business invitees of Clark's violent propensities; d) permitting business invitees to walk about the premises when Defendants knew, or in the exercise of reasonable care should have known, of Clark's violent propensities; e) failing to discharge, discipline, or otherwise take steps to remove Clark from the premises when Defendants knew, or in the exercise of reasonable care should have known, of Clark's violent propensities; f) failing to call the police, security, or other law enforcement personnel to deal with Clark's violent conduct when Defendants knew, or in the exercise of reasonable care should have known, of his violent propensi-

ties; g) failing to stop Clark's attack on Mr. Tiedeman; h) failing to take any action against Clark; h) otherwise being negligent, careless and reckless in failing to control Clark and/or to warn or guard against such attacks; j) attacking, beating, assaulting and committing battery upon Mr. Tiedeman; and k) breaching their duty to properly exercise control, care, custody and supervision of Clark. (R.R. at 6a–8a).

**4.** Governmental immunity may be raised by preliminary objections in the nature of a demurrer where it is apparent on the face of the complaint that a cause of action does not fall within any exception to governmental immunity. *Gallagher v. City of Philadelphia*, 142 Pa.Cmwlth. 487, 597 A.2d 747 (1991).

We must accept as true all well-pled allegations and material facts averred in the complaint as well as inferences reasonably deducible therefrom and any doubt should be resolved in favor of overruling the demurrer. *Id.*

Under the Act, local government agencies are immune from liability for their negligence unless their actions fall within an enumerated exception and would otherwise subject them to liability. At issue is whether the real property exception to governmental immunity applies. Section 8542(b)(3) provides that a local agency may be liable for its employees' or its own negligence related to the "care, custody or control of real property" in its possession. 42 Pa.C.S. § 8542(b)(3).

The Tiedemans maintain that the Supreme Court's decision in *Grieff v. Reisinger*, 548 Pa. 13, 693 A.2d 195 (1997), expands the real property exception to governmental immunity to include negligent or intentional acts committed in the context of real property and that therefore, it is controlling in the case *sub judice*. We disagree.

In *Grieff*, the Emlenton Volunteer Fire Association members spent a day cleaning and painting equipment for installation on a new fire truck. Marlene Reisinger, who worked nearby, stopped at the firehouse to socialize with Robert Grieff, the Fire Association Chief, and other Association members. She also helped them clean the fire station.

Grieff, in an attempt to remove paint from the floor near the kitchen, poured paint thinner onto the floor. The paint thinner flowed across the floor and under the refrigerator. At the same time, the refrigerator began to run and a spark from it ignited the paint thinner. The fire traveled to where Reisinger was standing and she was engulfed in flames. Reisinger sustained serious injuries.

Reisinger sued Grieff and the Fire Association, alleging that Grieff failed to exercise due care in the use and disposal of flammable liquids and that he failed to warn Reisinger of the risk of fire.

Grieff and the Fire Association moved for summary judgment under the Act. They argued that Reisinger failed to plead that any of the enumerated exceptions to governmental immunity applied. Reisinger responded by asserting the real property exception.

The court of common pleas denied summary judgment and held that the alleged negligent care of the fire station fell within the real property exception to governmental immunity. On appeal, this Court reversed, concluding that Reisinger did not assert that the real property itself was defective. The Supreme Court reversed our decision and reinstated the court of common pleas' denial of summary judgment.

The Tiedemans cite to specific passages from the *Grieff* decision in support of their position:

> Grieff's care of the Fire Association's property caused the fire that injured Reisinger. While he was removing paint from the floor, therein caring for the real property, it ignited causing the resultant injuries to Reisinger. Under the real property exception's plain language, Grieff and the Fire Association are not immune from suit.
>
> This case is unlike cases where the Court held that the real property exception did not apply because the government's property only facilitated injuries caused by third parties.
>
> . . .
>
> The Fire Association's property did not facilitate an injury by a third party. Rather, Grieff's and the Fire Association's alleged negligent care of the property caused Reisinger's injury. The Reisingers' claim falls squarely within the real property exception.

*Grieff*, 548 Pa. at 16–17, 693 A.2d at 197 (footnote omitted).

From this language, the Tiedemans argue that Mr. Tiedeman's injuries arose out of Defendants' negligence in knowingly allowing a dangerous condition to exist on the premises, that dangerous condition being Clark. However, our courts have consistently held that the dangerous condition must arise from the property itself, or the care, custody and control of it. Clark is a human being, not real property owned or maintained by the City. Thus, the condition of the Defendants' property, or negligent maintenance of it, did not cause Mr. Tiedeman's injuries.

We reject the Tiedemans' interpretation of *Grieff* and conclude that this case is controlled by the Supreme Court's decisions in *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987) and *Chevalier v. City of Philadelphia*, 516 Pa. 316, 532 A.2d 411 (1987).

In *Mascaro v. Youth Study Center*, Claude Opher was a detainee at the Center, a detention facility for juvenile criminal defenders. Opher escaped from the Center, broke into the Mascaros' home, and terrorized the Mascaro family.[5]

The Mascaros brought a civil suit against the Center, the City of Philadelphia, the City's then-managing director, and the Commonwealth. The complaint alleged that because of the defendants' negligence in maintaining the Center, Opher was able to escape and injure the Mascaros. In their answer, defendants raised the affirmative defense of governmental immunity and asked for judgment on the pleadings.

The court of common pleas agreed with defendants and granted judgment on the pleadings. An appeal was taken to this Court. We reversed the court of common pleas, concluding that the Mascaros' complaint stated a cause of action under the real property exception.

In reversing our decision, the Supreme Court stated that:

We agree that the real estate exception to governmental immunity is a narrow exception and, by its own terms, refers only to injuries arising out of the care, custody or control of the real property in the possession of the political subdivision or its employees. Acts of the local agency or its employees which make the property unsafe for the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be foreseen to be used, are acts which make the local agency amenable to suit. Acts of *others*, however, are specifically excluded in this general immunity section (42 Pa.C.S. § 8541), and are nowhere discussed in the eight exceptions. On this basis alone, we must conclude that any harm that others cause may not be imputed to the local agency or its employees....

The real estate exception, however, has consistently been held to be unavailable to those whose claim of negligence consists of a failure to supervise the conduct of students or persons adequately.

We believe those cases to have been decided correctly and they persuade us to hold that the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability.

We believe the Legislature has clearly precluded the imposition of liability on itself or its local agencies for acts of

---

5. The Mascaros caught Opher and his accomplice in the act of burglarizing their home. Opher and his accomplice tied up Mr. and Mrs. Mascaro and their son. The accomplice raped Mrs. Mascaro. Opher beat, raped, and sodomized the Mascaros' daughter in another room, as the rest of her family was forced to listen to her scream. Mr. Mascaro ultimately committed suicide because he could no longer live with the memory of the tragedy that struck his family.

third parties by its language of § 8541, *supra,* and that it has not seen fit to waive immunity for these actors or their acts in any of the eight exceptions.

Such a legislative judgment is wholly within the province of the Legislature according to our current interpretation of sovereign and governmental immunity, *Carroll v. York,* 496 Pa. 363, 437 A.2d 394 (1981), and is consistent with the general rule that the criminal and negligent acts of third parties are superseding causes which absolve the original actor (the City and the Center) from liability for the harm caused by such third parties.

This is also consistent with the Legislative determination that the criminal acts, actual fraud, actual malice or willful misconduct of its *own* agency or employees acting within the scope of their duties are not the subject of suit or liability. 42 Pa.C.S. § 8542(a)(2), *supra.* It would be incongruous, indeed, to shield the City or Center from liability for the crimes of its agents and employees, but impose liability for the crimes of others. We believe, given the legislative scheme of immunity, that the Act consistently excludes all criminal acts from liability, including the acts of criminals, such as Opher, who take advantage of defects in municipal property to commit their own crimes.

*Id.* at 361–364, 523 A.2d at 1123–1124 (emphasis in the original, citations and footnotes omitted).

The Supreme Court applied the same rationale in *Chevalier v. City of Philadelphia,* 516 Pa. 316, 532 A.2d 411 (1987).[6] Chevalier was attacked on City property. In his complaint against the City, Chevalier alleged that the attack on him was facilitated by the lack of proper security and lighting in the parking lot where he was attacked. Citing *Mascaro,* the Court stated that "the harm caused by third

persons may not be imputed to a local agency or its employees." *Id.* at 319, 532 A.2d at 413.

The case for governmental immunity is even stronger in the case *sub judice,* given the fact that there was no defect or condition of the real property that caused Mr. Tiedeman's injuries. Clark's tortious and criminal conduct alone caused Mr. Tiedeman's injuries.

The fact that Clark was a City employee, as opposed to a third party, does not negate the defense of governmental immunity but rather, strengthens it. Section 8550 of the Act specifically excludes any action of an employee that is determined to constitute a crime, actual fraud, actual malice, or willful misconduct from imposing liability on part of the local agency. 42 Pa.C.S. § 8550. Here, there is no dispute that Clark committed intentional acts upon Mr. Tiedeman. We can in no way logically conclude that the City's real property in some way contributed to or facilitated those injuries.

Accordingly, we affirm.

## ORDER

AND NOW, this 22nd day of June, 1999, the order of the Court of Common Pleas of Philadelphia County dated August 11, 1998, is hereby affirmed.

---

6. *Chevalier* attempted to invoke the fourth exception to governmental immunity relating to trees, traffic control and street lighting. Section 8542(b)(4) of the Act, 42 Pa.C.S. § 8542(b)(4).