Jermaine D. CURETON, a minor, By and Through his parent and natural guardian, Loretta CANNON, and Loretta Cannon, in her own right,

v.

## PHILADELPHIA SCHOOL DISTRICT, Appellant.

Jermaine D. Cureton, a minor, By and Through his parent and natural Guardian, Loretta Cannon, and Loretta Cannon, in her own right,

v.

Philadelphia School District, Appellant.

Commonwealth Court of Pennsylvania.

Argued March 12, 2002.

Decided April 18, 2002.

Reargument Denied June 12, 2002.

Suzanne McDonough, Philadelphia, for appellant.

Alan Starker, Philadelphia, for appellees.

BEFORE: SMITH–RIBNER, J., FRIEDMAN, J., and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

In these consolidated appeals, the School District of Philadelphia (School District) appeals and Jermaine D. Cureton, a minor by and through his parent and natural guardian, Loretta Cannon, and Loretta Cannon, in her own right, cross appeal from an order of the Court of Common Pleas of Philadelphia (trial court) denying the School District's motion for post trial relief and affirming the award entered in favor of Cureton and against the School District in the amount of $35,000. We affirm in part, vacate in part, and remand.

On October 11, 1996, Cureton permanently disfigured his right index finger during the course of a shop class at Fels High School. At the time of the incident, Cureton was a thirteen-year-old ninth grade student. The facts surrounding the accident are as follows.

Cureton went to his scheduled shop class on October 11, 1996, and proceeded to gather his equipment, which included a pair of goggles, and his current project. Cureton was unable to retrieve an apron because there were none available as there were only about 10 to 12 aprons for 19 students. Cureton then proceeded to the scroll saw, which he was using for his project. Cureton had used the scroll saw for the first time during the week of October 7, 1996. However, the scroll saw was dirty with sawdust so Cureton gathered a hand broom and dust pan in order to clean the saw. George Thomas, the shop teacher, had instructed the students to keep the pulleys of the scroll saw free from dust. Cureton was given permission by Thomas to clean the saw. This was the first opportunity for Cureton to clean the scroll saw. Although, on prior occasions, Thomas had turned off the main power switch to the machines in order to allow the students to clean the machines, Thomas did not turn off the main power switch while Cureton was cleaning the scroll saw. Thomas testified that he noticed that Cureton was not wearing an apron and that his shirttails were untucked while Cureton was cleaning the saw.

After cleaning the saw, Cureton reached over the saw and turned it on to see if there was any dust remaining in the pulleys. When he turned on the saw, Cure-

ton's untucked shirttails became caught in the saw's pulleys. While attempting to dislodge his shirttails from the pulleys, Cureton's right index finger got caught in the pulleys and the pulleys amputated a portion of his finger. Cureton was taken to the hospital where the finger was surgically repaired. Cureton's finger remains deformed and scarred as a result of the incident.

Cureton filed a complaint on February 27, 1997 alleging that he sustained serious injuries to his finger when he was cleaning a scroll saw during shop class at Fels High School. Initially, Cureton's complaint was filed as a product liability suit, but an amended complaint filed on June 6, 1997, removed the product liability claims and substituted therein negligence claims against the School District. After a nonjury trial, the trial court found in favor of Cureton and against the School District in the amount of $35,000. The School District filed a post-trial motion requesting that the trial court entered a judgment notwithstanding the verdict or in the alternative a new trial. Cureton filed a petition for delay damages pursuant to Pa. R.C.P. No. 238. Following oral argument, the trial court denied the School District's motion and affirmed the award in favor of Cureton in amount of $35,000. These appeals followed.

## I. SCHOOL DISTRICT'S APPEAL

In its appeal,[1] the School District raises the following issues:

1. Whether the trial court erred in finding the scroll saw was a fixture under what is commonly referred to as the Political Subdivision Tort Claims Act,

Sections 8541–42 of the Judicial Code, 42 Pa.C.S. § 8541–42, and that proof of a defective or dangerous condition of the saw is unnecessary under the real property exception thereto;

2. Whether the trial court committed reversible error entitling the School District to a new trial based upon the finding that Cureton, 41 days short of his 14th birthday, was presumed incapable of negligence; and

3. Whether the trial court erred in imposing liability upon the School District based on theories of negligence that are materially at variance with the amended complaint as well as wholly outside the parameters of the Political Subdivision Tort Claims Act.

In support of the first issue, the School District initially argues that the trial court erred in finding that the scroll saw was a fixture and fell within the real property exception to governmental immunity pursuant to Section 8542(b)(3) of the Judicial Code or what is commonly referred to as the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8542(b)(3). The School District contends that there is no evidence that the School District intended to leave the scroll saw in a particular location or that it was the intention of the School District to permanently affix the machine to the realty.

Local government agencies are generally immune from tort liability. Section 8541 of the Judicial Code. This "governmental immunity," however, is not absolute. Section 8542 of the Judicial Code provides that an injured party may recover in tort from a local agency if: (1) damages would be otherwise recoverable under

1. This Court's scope of review of an order of a trial court denying a motion for post-trial relief is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Pikur Enterprises, Inc.* *v. Pennsylvania Department of Transportation,* 163 Pa.Cmwlth. 251, 641 A.2d 11 (1994), *petition for allowance of appeal denied,* 539 Pa. 657, 651 A.2d 543 (1994).

common law or statute; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one of eight enumerated categories. One exception is known as the real property exception. *Id.* The real property exception imposes a liability upon a local agency for:

> The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency.

Section 8542(b)(3) of the Judicial Code.

■ There are three types of chattels used in connection with real estate, the third, which is applicable here, being those chattels "which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed." *Blocker v. City of Philadelphia*, 563 Pa. 559, 563, 763 A.2d 373, 375 (2000) (quoting *Clayton v. Lienhard*, 312 Pa. 433, 436–37, 167 A. 321, 322 (1933)).[2] "[T]hese become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation." *Id.* "[I]n this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable." *Id.*

It is well settled "that consideration of the intention of an owner regarding whether a chattel has been permanently placed on real property is relevant only where the chattel has in fact been affixed to the realty." *Id.* at 562–63, 763 A.2d 373, 763 A.2d at 375. In determining intent, it is what intended use of the property was manifested by the conduct of the party that must be considered. *Canon–McMillan School District v. Bioni*, 127 Pa. Cmwlth. 317, 561 A.2d 853 (1989).

■ Herein, the trial court found, based on the evidence presented, that: (1) the scroll saw was in its place at Fels High School since at least 1987; (2) the scroll saw was permanently hardwired through the building where there is only one main power supply which feeds the shop class; (3) the scroll saw was bolted to the ground by four bolts; and (4) the scroll saw was never removed from the wood shop classroom. Based on these facts, the trial court correctly placed the scroll saw into the third category of chattels as the scroll saw is physically connected with the real estate and can be removed without destroying or materially injuring the scroll saw or the property upon which it is annexed.

Thereafter, the trial court determined, based on the intent of the School District, that the scroll saw was realty and not personalty. The trial court reached this conclusion after considering: (1) the nature of the scroll saw; (2) the status of the annexor in respect to the realty; (3) the manner of annexation; and (4) the use for which the scroll saw was installed. Based upon the foregoing intention factors and the above stated findings of fact, the trial

---

2. The first type of chattel used in connection with real estate are those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used. *Blocker*. This type always remain personalty. *Id.* The second type of chattel are those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves. *Id.* These chattels are realty, even in the face of an expressed intention that they should be considered personalty. *Id.*

court concluded that the School District intended to make the scroll saw part of its realty. We agree and reject the School District's arguments to the contrary. Accordingly, the trial court correctly determined that Cureton's claims fell within the real property exception to governmental immunity pursuant to Section 8542(b)(3) of the Judicial Code.

Next, the School District argues further that even if the scroll saw is considered part of the realty, it must still be established that there is some defect or dangerous condition of the actual equipment that caused the injury. The School District contends that this is true even under the more liberal standard for real property negligence enunciated in *Grieff v. Reisinger*, 548 Pa. 13, 693 A.2d 195 (1997). The School District argues that this is in reality a cased based on a theory of negligent supervision and such theory is barred by the Political Subdivision Tort Claims Act as a matter of law. Therefore, the School District contends, the trial court erred by concluding that it was unnecessary under the real property exception to prove any defect of the fixture or the real property itself.

■ In order to maintain a negligence claim under the real property exception, the injured party must prove that the injury resulted from a dangerous condition arising from the care, custody and control of the real property by a local government agency. *Mellon v. City of Pittsburgh Zoo*, 760 A.2d 921, 924 (Pa.Cmwlth.2000). Recently, this Court in *Tackett v. Pine Richland School District*, 793 A.2d 1022 (Pa. Cmwlth.2002),[3] summarized the applicable precedent regarding a negligence claim under the real property exception as follows:

In *Grieff*, a volunteer fire chief poured paint thinner on a firehouse floor in order to clean it. The plaintiff sustained severe burn injuries when the paint thinner ignited and engulfed her in flames. In determining that the liability fell within the real property exception, the Pennsylvania Supreme Court moved away from the "on-off distinction" and held that the real property exception is triggered whenever the cause of the injury involves the "care, custody and control" of the real property. While no part of the real estate was defective or malfunctioning, the Supreme Court determined that the affirmative action taken by the fire chief in caring for the property under his custody and control caused the plaintiff's injury. *Grieff.*

In *Hanna v. West Shore School District*, 548 Pa. 478, 698 A.2d 61 (1997), the plaintiff sued a school district for injuries caused by an accumulation of water on its real property. This Court initially rejected the plaintiff's claim on the ground that the school district was immune from suit as the injury was not caused by the property itself, but by water on the property. [*Hanna v. West Shore School District*, 717 A.2d 626 (Pa. Cmwlth.1998)]. The Supreme Court reversed our decision and remanded the case for further consideration in light of its decision in *Grieff.* On remand, we concluded that the school district was not immune because the plaintiff's injuries were caused by the school district's *negligent care* of the real estate. *Hanna v. West Shore School District*, 717 A.2d 626 (Pa.Cmwlth.1998).

Following *Grieff* and *Hanna*, this Court has addressed the issue of whether the real property exception extended

**3.** In *Tackett*, a student was injured during the course of a chemistry experiment when two classmates ignited ethyl alcohol. This Court held that the injuries were not caused by the negligent care, custody or control of real property but rather were caused by a chemistry experiment that went awry.

to those whose claim of negligence consists of a failure to supervise the conduct of persons adequately or a failure to conduct an activity in an appropriate area of the property. *Wilson v. Norristown Area School District,* 783 A.2d 871 (Pa.Cmwlth.2001); *Tiedeman v. City of Philadelphia,* 732 A.2d 696 (Pa.Cmwlth. 1999), *petition for allowance of appeal denied,* 562 Pa. 678, 753 A.2d 823 (2000). In *Tiedeman,* a heating maintenance company's worker, who was allegedly assaulted by a city employee while on city-owned property, brought a negligence action against the city on the basis that the city was negligent for failing to supervise and control its employee. The trial court dismissed plaintiff's complaint based upon governmental immunity. On appeal to this Court, we concluded that the real property exception to governmental immunity was not applicable to the negligence action because there was no defect or condition of the real property that *caused* the worker's injuries. This Court emphasized that the dangerous condition, which causes the injury, must arise from the property itself, or the care, custody and control of it. In *Tiedeman,* neither the condition of the city's property, nor the negligent maintenance of it, caused the plaintiff's injuries. Rather, the city employee's tortious and criminal conduct alone caused the plaintiff's injuries. *Id.*

In *Wilson,* a school's field hockey coach moved practice indoors in inclement weather and required team members to run relay tag drills in the school's staircases and hallways. During this practice, a student lost her footing in a stairwell and sustained multiple injuries. The trial court granted compulsory nonsuit based upon governmental immunity. On appeal to this Court, the student argued that because the coach was in control of the stairs, the negligence fell within the real property

exception. This Court disagreed, finding that the negligence involved the negligent care, custody and control of *the students,* rather than the real property. In *Wilson,* there was nothing wrong with the stairs; the problem was the coach's decision to use the stairs for practice. This Court held that the failure to conduct an activity in an appropriate area of the school property does not constitute a dangerous condition arising from the care, custody or control of real property. *Id.*

In *Usher v. Upper St. Clair School District,* 87 Pa.Cmwlth. 461, 487 A.2d 1022 (1985), an action was initiated against a school district for injuries sustained by a student during a chemistry experiment. Summary judgment was granted by the trial court. On appeal, this Court held that the alleged negligence of the school teacher in failing to properly supervise and conduct the chemistry experiment and in failing to take adequate measures to protect the student, which resulted in burns to the student, was not related to the "care, custody or control" of real property. This Court stated that "the teacher's alleged failure to control the area of the experiment is more akin to the allegation of the failure to supervise the students which we held subject to the defense of governmental immunity." *Id.* at 1023.

*Tackett,* 793 A.2d at 1024.

In *Tackett,* this Court found the facts more analogous to *Tiedeman, Wilson,* and *Usher* than to *Grieff* and *Hanna* and held that the injuries were not caused by the negligent care, custody or control of real property but rather were caused by a chemistry experiment that went awry. However, in the present case, we conclude that *Grieff* and *Hanna* are controlling.

 As found by the trial court, the negligence of the School District in the

care, custody and control of the scroll saw consisted of the failure to turn off the main power supply while Cureton was cleaning the scroll saw and allowing students to access the pulley belts of the scroll saw when it was foreseeable that such a use posed a danger. Thomas, the shop teacher, had instructed the students to keep the pulleys of the scroll saw free from dust. Thus, it was the students' responsibility to clean the scroll saws and Thomas gave Cureton permission to clean the scroll saw on the day of the incident. More importantly, on prior occasions, Thomas had turned off the main power switch to the machines in the shop in order to allow the students to clean the machines. However, on this particular occasion, Thomas did not turn off the main power switch while Cureton was cleaning the scroll saw. Therefore, we reject the School District's contention that this is really a case based on a theory of negligent supervision. We conclude that the School District was negligent in caring for and controlling the scroll saw in Thomas's custody by Thomas's failure to turn off the main power switch, as had been done in the past, prior to Cureton's cleaning of the scroll saw.

Accordingly, the trial court properly held that the School District was negligent in its care, custody and control of the scroll saw.

In support of the second issue raised herein, the School District argues that the trial court committed reversible error in presuming a nearly fourteen year old shop student incapable of negligence. The School District points out that Cureton was only forty-one days away from his fourteenth birthday; therefore, the presumption that Cureton was incapable of negligence was rebuttable. The School District contends that the trial court did not utilize the rebuttable presumption standard. Thus, the School District ar-

gues that it is entitled to have the verdict reversed and judgment entered on its behalf. We disagree.

■ The law with respect to the standard of care applicable to minors is as follows:

> Both an adult and a minor are under an obligation to exercise reasonable care; however, the "reasonable care" required of a minor is measured by a different yardstick it is that measure of care which other minors of like age, experience, capacity and development would ordinarily exercise under similar circumstances. In applying that yardstick, we place minors in three categories based on their ages: minors under the age of seven years are conclusively presumed incapable of negligence; minors over the age of fourteen years are presumptively capable of negligence, the burden being placed on such minors to prove their incapacity; minors between the ages of seven and fourteen years are presumed incapable of negligence, but such presumption is rebuttable and grows weaker with each year until the fourteenth year is reached.

*City of Philadelphia v. Duda,* 141 Pa. Cmwlth. 88, 595 A.2d 206, 211 (1991), *petition for allowance of appeal denied,* 532 Pa. 658, 615 A.2d 1314 (1992) (quoting *Kuhns v. Brugger,* 390 Pa. 331, 340, 135 A.2d 395, 401 (1957)).

Herein, our review of the trial court's findings reveals that the trial court did utilize the rebuttable presumption standard. The trial court stated that the School District failed to sustain its burden of proof by offering evidence to rebut the presumption that Cureton was anything other than presumed incapable of being negligent at the time of the accident. The trial court stated further that in assessing children of like age, the trial court was presented absolutely no evidence by the School District that would refute or chal-

lenge that this is what other classmates did or would do in terms of checking the pulleys after cleaning the saw in question.

■ Our review of the record shows that the trial court's findings are correct. The School District did in fact fail to present such evidence. Moreover, the School District does not refer this Court to any record evidence presented by the School District to show that the presumption was rebutted. The School District merely argues in its brief that because Cureton testified articulately at trial, it was clearly revealed to the trial court that Cureton was able to comprehend the danger, understood the risks and appreciated the consequences with respect to handling the machinery in question. However, the burden was on the School District and such reference by the School District to Cureton's manner of testifying without citing to any record evidence reinforces the conclusion that the trial court did not err in finding that the School District failed to meets its burden of rebutting the presumption that Cureton was incapable of negligence.

Accordingly, we reject the School District's contention that the trial court committed reversible error by not utilizing the proper standard in determining that Cureton was incapable of being negligent at the time of the accident.

In support of the third and final issue raised by the School District in this appeal, the School District argues that the trial court committed reversible error when it imposed liability based on theories of negligence materially at variance from those pled in the amended complaint and outside the parameters of the Political Subdivision Tort Claims Act. The School District argues that despite its attempts to narrow the pleadings through preliminary objections, Cureton set forth different theories of liability at trial than those set forth in the amended complaint.

Upon review of Cureton's amended complaint, we agree with the trial court that the allegations contained therein set forth a cause of action in negligence predicated upon the School District's negligent care, custody and control of the scroll saw. Therefore, we reject the School District's last argument as meritless.

Accordingly, that portion of the trial court's March 14, 2001 order denying the School District's motion for post-trial relief is affirmed.

## II. CURETON'S APPEAL

■ In his cross appeal, Cureton argues that the trial court committed reversible error by failing to rule upon Cureton's petition for delay damages. Cureton argues that it did not postpone the trial date or otherwise contribute to any delay in the scheduling of this matter for trial. Therefore, pursuant to Pa. R.C.P. No. 238, Cureton contends that he is entitled to delay damages from 1997 until 2000.

Upon review of the trial court's order, we believe that the trial court did rule on Cureton's petition for delay damages when the court affirmed the award in favor of Cureton in the amount of $35,000, which was the original award amount. In addition, as reflected by the transcript of the oral argument on the motion for post-trial relief, the trial court was aware that the issue of delay damages was pending. *See* Reproduced Record at 596a. However, in its opinion in support of its March 14, 2001 order, the trial court did not set forth its reasons for merely affirming the award in the original amount of $35,000 without awarding delay damages.

■ Pursuant to Pa. R.C.P. No. 238, at the request of the plaintiff in a civil action seeking monetary relief for bodily injury, damages for delay shall be added to the amount of compensatory damages awarded against each defendant found to be liable

to the plaintiff in the decision of the court in a non-jury trial and the delay damages shall become part of the award. Damages for delay shall be awarded in actions commenced on or after August 1, 1989, from a date one-year after the date original process was first served in the action up to the date of the award. Pa. R.C.P. No. 238(a)(2). While certain time periods are excluded from the period of time for which damages for delay shall be calculated,[4] it is clear from the plain language of Rule 238 that Cureton is entitled to delay damages for any period of time for which an exclusion does not apply.[5] However, it is the trial court's function to determine the period of time for which delay damages shall be calculated and to compute the amount of delay damages to be awarded.

Accordingly, we vacate that portion of the trial court's March 14, 2001 order affirming the award entered in favor of Cureton and against the School District in the amount of $35,000, as Cureton is entitled to $35,000 plus the amount of delay damages, and remand this matter to the trial court for reconsideration of Cureton's petition for delay damages.

### ORDER

AND NOW, this *18th* day of *April,* 2002, the order of the Court of Common Pleas of Philadelphia County, at No. 3132, February Term, 1997, dated March 14, 2001, is affirmed in part and vacated in part in accordance with the foregoing opinion. This matter is remanded for reconsideration of the Petition for Delay Damages filed by Jermaine D. Cureton, a minor, by and through his parent and natural Guardian, Loretta Cannon, and Loretta Cannon, in her own right, in accordance with the foregoing opinion.

Jurisdiction relinquished.

---

4. Pursuant to Pa.R.C.P. No. 238(b):
 (b) The period of time for which damages for delay shall be calculated under subdivision (a)(2) shall exclude the period of time, if any,
 (1) after which the defendant has made a written offer of
 (i) settlement in a specified sum with prompt cash payment to the plaintiff, or
 (ii) a structured settlement underwritten by a financially responsible entity,

and continued that offer in effect for at least ninety days ...
 (2) during which the plaintiff caused delay of the trial.

5. We note that delay damages can be assessed against a local agency or governmental body. *Robinson and City of Philadelphia v. Jackson,* 145 Pa.Cmwlth. 211, 602 A.2d 917 (1992), *petition for allowance of appeal denied,* 531 Pa. 647, 612 A.2d 985 (1992).