J-S03018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MILITARY RESOURCE ENHANCEMENT SPECIALISTS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 954 WDA 2021 |
| GREEN DIAMOND SERVICES, LLC | : | |

Appeal from the Order Entered July 15, 2021
In the Court of Common Pleas of Cambria County
Civil Division at No(s): No. 2021-0610

BEFORE: LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED: APRIL 1, 2022**

Military Resource Enhancement Specialists, Inc. ("MRES"), appeals from the order granting the motion to enforce the license agreement filed by Green Diamond Services, LLC ("Green Diamond"). We affirm.

The trial court set forth the relevant factual and procedural background of this matter as follows:

> This case arises out of the sale of [real] property and removal of items contained on the property in Cambria County, Pennsylvania. On or about October 28, 2016, the parties entered into an Option and Agreement of Purchase and Sale for the purchase of 48.460 acres of land and improvements comprising the former Bethlehem Steel rail car plant in Franklin Borough ("property") for a sale price of $800,000.00. After extensive negotiation and litigation, the transfer of the real estate occurred on October 30, 2020, wherein [MRES] conveyed the property to . . . Green Diamond in accordance with [an arbitration award]. Green Diamond alleges that MRES refused to enter into a license

---

[*] Retired Senior Judge assigned to the Superior Court.

agreement with Green Diamond to govern entry onto the property by MRES in order to perform the clean[]up of the property. On March 10, 2021, MRES filed a complaint and petition for preliminary injunction to prevent Green Diamond from disposing of MRES property after Green Diamond allegedly changed the locks on the maintenance building on the property. On March 25, 2021, the parties appeared before this court and entered into an agreement ("license agreement") related to the petition for preliminary injunction. The license agreement set forth the timing of the MRES clean[]up of the property and set deadlines for the removal of items. Following the entry of the license agreement, Green Diamond was allegedly made aware that MRES intended to remove a 150[-]ton hydraulic press ("press"), an air compressor ("compressor"), and a six[-]ton truck lift ("lift") from the maintenance building. Green Diamond objected to the removal of these three items by MRES, arguing that the items are fixtures and not personal property, and ownership of the said items passed to Green Diamond upon sale of the property. On April 22, 2021, MRES did remove the press, the compressor, and the lift from the maintenance building. Green Diamond filed the current motion to enforce the license agreement on May 5, 2021[, to which it attached numerous documents and photographs, including the license agreement, arbitration award, sale documents, and photographs of the property. MRES filed a response to the motion to which it attached a copy of the Option and Agreement of Purchase and Sale]. A hearing was held before this court on June 22, 2021, at which the attorneys presented oral argument and referenced the documents and photographs previously submitted to the trial court. On July 15, 2021, the court granted the motion [to enforce the license agreement. The trial court also awarded costs for the reinstallation of the items and attorneys' fees for preparing and presenting the motion.]

Trial Court Opinion, 7/25/21, at 1-2 (unnecessary capitalization omitted).[1]

MRES filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[2]

MRES raises the following issues for our review:

1. Whether the trial court erred, as a matter of law, in determining that the air compressor, press[,] and lift were fixtures attached to the building; and as such, were part of the building and were included in the sale of the building?

2. Whether the trial court abused its discretion in finding that a piece of equipment that is required to be anchored in place for safe operation becomes a fixture that is permanently attached to the building and becomes a part of the building as sold?

MRES's Brief at 4.

_____

[1] MRES did not file a post-trial motion. **See** Pa.R.Civ.P. 227.1. However, neither the parties nor the trial court denominated or noticed the June 22, 2021 hearing as a trial. **See Wolk v. Sch. Dist. Of Lower Merion**, 197 A.3d 730, 740-41 (Pa. 2018) (holding that when the trial court enters an order in a non-jury case that disposes of the last remaining claims, it should specify that the hearing is deemed a trial and clarify that post-trial motions are due). Moreover, parties to a proceeding that does not amount to a trial do not need to file post-trial motions to preserve issues for appeal. **See G & G Investors, LLC v. Simmons Real Estate Holdings, LLC.**, 183 A.3d 472, 477 (Pa. Super. 2018). In the instant matter, the parties did not present testimony or new evidence at the June 22, 2021 hearing on the motion to enforce the license agreement. Therefore, it was not a proceeding that required post-trial motions for issue preservation. **See Vautar v. First Nat. Bank of Pa.**, 133 A.3d 6, 11-12 (Pa. Super. 2016) (providing where parties took no new testimony and introduced no new evidence, and court issued verdict based solely on evaluation of existing record, the proceeding did not amount to trial and post-trial motions were unnecessary).

[2] The trial court did not author a Pa.R.A.P. 1925(a) opinion, and instead elected to rely on its July 15, 2021 opinion explaining its order granting the motion to enforce the license agreement.

MRES's issues involve the same arguments; therefore, we will address them together.[3]  As the parties elected to enter into the license agreement *in lieu* of further litigation in the proceedings below, we view the license agreement as a type of settlement agreement for purposes of appellate review.  Our standard of review of a trial court's ruling on a motion to enforce a settlement agreement as follows:

> Our Court's standard of review of a trial court's grant or denial of a motion to enforce a settlement agreement is plenary, as the challenge is to the trial court's conclusion of law.  The appellate court is free to draw its own inferences and reach its own conclusions from the facts as found by the trial court.  However, the appellate court is only bound by those findings of fact by the trial court that are supported by competent evidence.

*Casey v. GAF Corp.*, 828 A.2d 362, 367 (Pa. Super. 2003)

Chattels that are used in connection with real estate generally fall into one of three categories.  *See Clayton v. Lienhard*, 167 A. 321, 322 (Pa. 1933).  Those categories are as follows:

> First, chattels that are not physically attached to realty are always personalty.  Second, chattels which are annexed to realty in such a manner that they cannot be removed without materially damaging either the realty or the chattels are always fixtures.  The third category consists of those chattels that are physically connected to the real estate but can be removed without material injury to either the land or the chattels.  When a chattel falls into the third category, its status as a fixture or as personalty depends upon the objective intent of the [owner] to permanently incorporate [the] chattel into real property, as evidenced by the

---

[3] We note with disapproval that the entirety of MRES's discussion of its first issue is incorporated by reference into the discussion of its second issue, which otherwise consists of a single sentence.  Further, while MRES has framed its first issue as a claim of legal error by the trial court, it argues the trial court abused its discretion in finding that the press, compressor, and lift are fixtures.

proven facts and surrounding circumstances entered into evidence.

*Lehmann v. Keller*, 684 A.2d 618, 621 (Pa. Super. 1996) (internal citations and quotation marks omitted). The parties agree that the press, compressor, and lift fall into the third category of chattels. Therefore, the question before this Court is whether the proven facts and surrounding circumstances evidence an objective intent to permanently incorporate these items into the maintenance building.

The general test used in determining when an article of personalty is a fixture has three components: (1) the relative permanence of attachment to realty; (2) the extent to which the chattel is necessary or essential to the use of the realty; and (3) the intention of the parties to make a permanent addition to the realty. *See Noll by Noll v. Harrisburg Area YMCA*, 643 A.2d 81, 87-88 (Pa. 1994). The considerations in making such a determination may include:

> [T]he degree to which and manner in which the object is attached to real property, the ease of removing the object, whether the object may be removed without damaging the real property, how long the object has been attached to the real property, whether the object is necessary or essential to the real property, and the conduct of the party and whether it evidences an intent to permanently attach the object to the reality.

*Id*. (citations omitted).

MRES does not challenge the terms of the license agreement or that the ownership of the press, compressor, and lift, if deemed to be fixtures, passed to Green Diamond upon the sale of the property. Instead, MRES contends

that trial court misapplied the above legal standards and improperly analyzed the facts of this case when applying the three-part fixture test.

In discussing the first prong of the fixture test, which considers the relative permanence of attachment to realty, MRES concedes that: (1) the press, compressor, and lift were bolted to the floor of the maintenance building; (2) the press was also anchored to the floor by four angle irons embedded in the concrete; (3) the press, compressor, and lift were required to be hardwired into the maintenance building's electrical system to operate at a high voltage; and (4) the compressor was connected to the air pipes in the maintenance building. MRES's Brief at 8, 13-14. Nevertheless, MRES asserts that manner in which the press, compressor, and lift were installed does not indicate that they were intended to be permanent fixtures. Instead, MRES contends that such attachments indicate only that the items were used in accordance with the manufacturer's recommendations for safe operation and in compliance with OSHA standards. MRES likens the press, compressor, and lift to common household items, such as a dresser or television, which remain personal property despite being bolted to a wall. MRES additionally points out that it was required to remove several other pieces of equipment from the property which were hardwired and bolted in place, including a scale, baler, camera building, wood shop, rectifiers, pedestal grinder, tire machine, and drill press.

Turning to the second prong of the fixture test, which considers the extent to which the object is necessary or essential to the use of the realty, MRES indicates that the agreement for sale of the property, entered into by the parties in 2016, clearly states that the transfer was "to allow Purchaser to operate a rail tank car repair, retrofit, repurposing and car cleaning facility and a bulk transfer and water processing facility on the on the [p]roperty." MRES's Brief at 15 (quoting Option and Agreement of Purchase and Sale, 10/28/16, at 4). MRES contends that there cannot be any inference that the stated purpose for the property would require the press, compressor, and lift because they were located in a building that is not connected to the train tracks.

In discussing the third prong of the fixture test, which considers the intention of the parties to make a permanent addition to the realty, MRES claims that the press, compressor, and lift appear to have been installed during the ownership of the property by Bethlehem Steel. MRES asserts that no testimony was presented regarding Bethlehem Steel's intentions when it installed the equipment. MRES concedes that the press, compressor, and lift were installed in the maintenance building when it purchased the property in 2002, but argues that this fact does not indicate that the items are fixtures to be included in all subsequent sales of the property.

The trial court explained its determination that the press, compressor, and lift are fixtures, as follows:

> First, . . . the three items were permanent attachments to the maintenance building and had been bolted into the concrete floor or hardwired into the electrical system of the maintenance building. Second, . . . the maintenance building is used to service trucks and heavy machinery, which is one reason why Green Diamond purchased the building as part of the property purchase, Lastly, upon considering the objective manifestations of the parties in the context of the first two components of the test, the court finds that, because the items were permanently made a part of the maintenance building, and because the items had never previously been removed at any time, it was the intent of the parties that the items remained with the maintenance building as fixtures. . . . [T]he court hereby finds that because the items were bolted into or hardwired into [the structure], . . . they were not intended to be removed from the maintenance building.

Trial Court Opinion, 7/15/21, at 6 (unnecessary capitalization omitted).

In reaching its determination, the trial court considered the reasoning of the Commonwealth Court in *Cureton v. Phila. School Dist.*, 798 A.2d 279 (Pa. Cmwlth. 2002).[4]  In *Cureton*, the Commonwealth Court determined that a scroll saw in a high school wood shop classroom was realty rather than personalty because (1) the saw had been in its place at the high school classroom since 1987; (2) the saw was permanently hardwired through the building's main power supply; (3) the saw was bolted to the ground by four bolts, and (4) the saw was never removed from the wood shop classroom. *See id*. at 283.  The *Cureton* Court looked to the following factors which indicated an intention by the school district to make the scroll saw part of its

---

[4] While decisions of the Commonwealth Court are not binding on this Court, they may serve as persuasive authority.  *See Lynn v. Aria Health Sys.*, 227 A.3d 22, 32 (Pa. Super. 2020).

realty: (1) the nature of the scroll saw; (2) the status of the annexor in respect to the realty; (3) the manner of annexation; and (4) the use for which the scroll saw was installed. *Id*.

Mindful of our standard of review, we conclude that the trial court applied the correct standard for determining whether the press, compressor, and lift were fixtures, and its factual findings in support of its determination are amply supported by competent evidence of record. MRES concedes that (1) the 150-ton hydraulic press, air compressor, and six-ton truck lift were bolted to the floor of the maintenance building; (2) the press was also anchored to the floor by four angle irons embedded in the concrete; (3) the press, compressor, and lift were required to be hardwired into the maintenance building's electrical system to operate at a high voltage; and (4) the compressor was connected to the air pipes in the maintenance building. MRES's Brief at 8, 13-14. Thus, there is no dispute that the press, compressor, and lift were affixed to the maintenance building in a relatively permanent manner.

MRES further concedes that Bethlehem Steel constructed the maintenance building and, as owner of the premises, installed the press, compressor, and lift.[5] *Id*. at 15-16. MRES describes these items as large

_____

[5] *See Canon-McMillan Sch. Dist. V. Bioni*, 533 A.2d 179, 184 (Pa. Cmwlth. 1987), *case remanded on other grounds*, 555 A.2d 901 (Pa. 1989) (explaining that the status of the annexor to the realty involves a determination of

pieces of industrial equipment designed to be bolted to the floor for safe operation. *Id*. at 13. MRES acknowledges that the press, compressor, and lift, as originally installed by Bethlehem Steel, were intact when it purchased the property in 2002, and that MRES never moved these items during its eighteen-year ownership of the property. *Id*. at 16. MRES explains that it used the maintenance building as a shop for the repair and maintenance of all equipment and vehicles it used in connection with its scrap operation. MRES acknowledges that, similar to its use of the maintenance building, Green Diamond intended to, *inter alia*, "operate a rail tank car repair, retrofit, repurposing and car cleaning facility" on the property. *See* MRES's Brief at 15 (quoting Option and Agreement of Purchase and Sale, 10/28/16, at 4). These facts indicate that the press, compressor, and lift were necessary or essential to the use of maintenance building.

Finally, we consider whether the record demonstrates that the parties intended to make the equipment a permanent addition to the realty. In making this determination, we look to the objective intent of the owner to permanently incorporate the equipment into the maintenance building, as evidenced by the proven facts and surrounding circumstances entered into

_____

whether the annexor is a mortgagor, lessee, lessor, owner, secured creditor, *etc*.). Here, the fact that Bethlehem Steel was the owner of the maintenance building when it installed the press, compressor, and lift (rather than a lessee or a third party) militates toward a finding that it intended the equipment to be permanent fixtures. *See id*.

- 10 -

evidence. *See Lehmann*, 684 A.2d at 621. As our Commonwealth Court has explained, "[t]he degree of attachment necessary to evidence an intent of permanence is not high." *In re Appeal of Sheetz, Inc.*, 657 A.2d 1011, 1014 n.7 (Pa. Cmwlth. 1995) (concluding that canopies placed over the gasoline pumps at a Sheetz service station became part of the real estate for purposes of assessing the value of the property). Further, the fact that an item has been and can be moved does not mean the intention was not to make it permanent. *See id*. at 1014. "It is sufficient if the item is intended to remain where affixed until worn out, until the purpose to which the realty is devoted is accomplished or until the item is superseded by another item more suitable for the purpose. *Id*.

In the instant matter, the proven facts and surrounding circumstances put forth in the record evidence an objective intent by Bethlehem Steel to permanently incorporate the press, compressor, and lift into the maintenance building and that such equipment was to remain where affixed until worn out or superseded. This conclusion is supported by the manner in which the press, compressor, and lift were affixed to the maintenance building, the use of the maintenance building, and the fact that, in the decades since their original installation,[6] the equipment had never been moved by either Bethlehem Steel

_____

[6] Green Diamond claimed that the press, compressor, and lift were installed in 1972 when Bethlehem Steel originally constructed the maintenance building. *See* Trial Court Opinion, 7/15/21, at 3. MRES did not dispute the

or MRES during their respective ownership of the structure. As the record supports the trial court's determination that the press, compressor, and lift are fixtures, and we discern no legal error in that ruling, MRES's issues warrant no relief.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Prothonotary

Date: 04/01/2022

---

date of installation for the press and compressor; however, it claimed that lift was not installed until 1991. **_See id_**. at 4. Even assuming that the lift was not installed until 1991, the equipment had been unmoved for at least twenty-nine years at the time the property was transferred to Green Diamond in 2020.

- 12 -