596 A.2d 1205

John MITCHELL, Administrator of the Estate
of William Healy, Deceased, Appellant,

v.

CITY OF PHILADELPHIA, Appellee.

Commonwealth Court of Pennsylvania.

Argued June 13, 1991.

Decided Aug. 13, 1991.

James J. DeMarco, for appellant.

Miriam B. Brenaman, Divisional Deputy in Charge of Appeals, for appellee.

Before COLINS and BYER, JJ., and NARICK, Senior Judge.

COLINS, Judge.

John Mitchell (Mitchell), Administrator of the Estate of William Healy (Healy), deceased, appeals from an order and judgment of the Court of Common Pleas of the City of Philadelphia (trial court), granting a directed verdict for the City of Philadelphia (City). We affirm.

The facts underlying this action are that, in the late evening of July 23, 1982, Healy, then 23 years of age, went with two minors to a large public swimming pool at Franklin Delano Roosevelt Park, a recreation area owned and operated by the City. The pool was closed for the night and the entrance gates were locked. Nevertheless, there were a large number of people in the pool when Healy and others entered the pool area through a hole in the fence. At approximately 8:30 p.m., Healy, an experienced and capable swimmer, was found floating beneath the surface of the water. The Fire Department's rescue service report, introduced at trial as the City's Exhibit No. 5, indicated that upon arrival, Healy had no pulse rate, no blood pressure, no respiration rate, and no respiration quality. Heroic measures were taken by the emergency medical technicians, which resulted in the eventual restoration of Healy's breathing and heart beat. Healy was taken by rescue personnel to the hospital where he remained in a coma until his death on December 27, 1982. Healy's estate, through representative Mitchell, commenced a wrongful death action against the City.

Following the presentation of both the plaintiff's and defendant's cases, the trial court granted a directed verdict for the City, holding that Mitchell: had failed to state a viable cause of action; was barred by the Recreational Use of Land and Water Act (Recreation Act),[1] and was also barred by the Political Subdivision Tort Claims Act (Tort Claims Act).[2]

1. Act of February 2, 1966, P.L. (1965) 1860, 68 P.S. §§ 477–1 to 477–8.

2. Act of November 26, 1978, P.L. 1399, *as amended, formerly,* 53 P.S. §§ 5311.101–5311.803, repealed by the Act of October 5, 1980, P.L. 693. *The current law regarding governmental immunity is now*

■ Noting that the trial court made its decision without the benefit of the recent Supreme Court holding in *Walsh v. City of Philadelphia*, 526 Pa. 227, 585 A.2d 445 (1991), we must rule that Mitchell is correct in his assertion that the City, in this situation, is not immune under the Recreation Act. The Recreation Act does not include swimming pools, which are outside the Recreation Act's intended penumbra. *Ithier v. City of Philadelphia*, 137 Pa.Commonwealth Ct. 103, 585 A.2d 564 (1991). In *Ithier*, this Court relied on *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 510 Pa. 1, 507 A.2d 1 (1986), when it held that an outdoor swimming pool constituted an improvement to real estate which did not fall within the scope of the Recreation Act. This decision was supported six days later in *Walsh*, when the Supreme Court held that the City was not afforded immunity under the Recreation Act with respect to basketball and boccie courts. In its decision, the Court stated:

> When a recreational facility has been designed with improvements that require regular maintenance to be safely used and enjoyed, the owner of the facility has a duty to maintain the improvements. When such an improved facility is allowed to deteriorate and that deterioration causes a foreseeable injury to persons for whose use the facility was designed, the owner of the facility is subject to liability. We do not believe that the [Recreation Act] was intended by the Legislature to circumvent this basic principle of tort law.

*Walsh*, 526 Pa. at 238, 585 A.2d at 450–51. Therefore, it is apparent that a granting of directed verdict, based on the Recreation Act, cannot be maintained.

Accordingly, this Court must next consider the trial court's two other reasons in support of its entry of a directed verdict. Mitchell contends that the trial court improperly held the City immune from liability under the Tort Claims Act, as the negligence claimed would fall within

⋅ found in Sections 8541 and 8542 of the Judicial Code, 42 Pa.C.S. §§ 8541–8542.

the real estate exception to the Tort Claims Act. Mitchell further maintains that the trial court erred in issuing a directed verdict for having failed to state a viable cause of action, based upon the trial court's conclusion that there was no proof that any defect in the real estate resulted in Healy's demise. Mitchell advances three theories of negligence which he argues are questions of fact for a jury to decide. The first is that there was a failure to supervise on the part of the lifeguards. Next, he alleges that there was a defect in the design of the pool. Lastly, Mitchell argues that the hole in the fence was a defect in the real estate which was the proximate cause of Healy's injury and death.

Our scope of review is limited to determining whether the trial court committed an error of law, or abused its discretion in granting a directed verdict, and that such an abuse or error controlled the outcome of the case. *McDevitt v. Terminal Warehouse Co.*, 304 Superior Ct. 438, 450 A.2d 991 (1982).

■ As previously noted, actions in tort against municipalities are governed by the Tort Claims Act. There are two requirements which must be met in order to successfully maintain an action against a political subdivision. First, as a precondition, there must be a cause of action which would allow the recovery of damages, at common law, against a tort-feasor not otherwise shielded by governmental immunity. Secondly, the cause of the injury must fit into one of the eight enumerated exceptions set forth in Section 8542(b) of the Tort Claims Act. *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987).

■ The threshold issue is the existence of the cause of action at common law which would allow recovery against a person or entity not protected by the Tort Claims Act's immunity. In reaching our conclusion, we must determine the existence of a duty on the part of the City, a breach of this duty, and a damage which results from this breach. First, Mitchell alleges that a defect in the design of the pool contributed to Healy's drowning. Mitchell offered expert

testimony that the design of the pool, with the deep section in the middle instead of at the end, made the pool defective, dangerous, and unsafe to be used as a public pool. The testimony also indicated that the depth markers in the pool had been painted over and there were no other markings to indicate bottom depth.

The Restatement (Second) of Torts, § 343 (1964), provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

Assuming arguendo that Healy was an invitee, there would clearly be a duty of care on the City's part if Mitchell's expert testimony were found to be both competent and credible by a trier of fact. *See City of Philadelphia v. Duda,* 141 Pa.Commonwealth Ct. 88, 595 A.2d 206 (C.D.1990, 1991). However, the City vigorously contends that no duty was owed to Healy, as he was a trespasser. This is enthusiastically countered by Mitchell's counsel's assertions that the testimony presented at trial would establish a duty of care, even if Healy were a trespasser.

Our analysis of the law indicates that, at common law, the City would have owed a duty to Healy despite his trespasser status. Restatement (Second) of Torts, § 336,[3] creates a duty to mark and maintain the pool in a safe condition, which would extend to trespassers, if the City

3. A possessor of land who knows or has reason to know of the presence of another who is trespassing on the land is subject to liability for physical harm thereafter caused to the trespasser by the possessor's failure to carry on his activities upon the land with reasonable care for the trespasser's safety.
Restatement (Second) of Torts, § 336 (1964).

knew of and acquiesced to continuing use by said trespassers.

We agree that the testimony introduced at trial by Mitchell, if believed, could have allowed the jury to conclude that the City had a policy of allowing permissive use of the pool after it was officially closed. The acquiescence is evident from the record which reveals that a large number of people routinely used the pool after hours and that the police had a policy of avoiding conflict by not interfering with the after hours swimmers, despite the close proximity of a police station. Accordingly, Mitchell satisfied the first requirement by setting forth a cause of action under common law which would allow recovery from one not cloaked with immunity.

Mitchell must next satisfy the second requirement that the cause of action must fit within one of the eight enumerated exceptions set forth in Section 8542(b) of the Tort Claims Act. However, even if a trespasser would be allowed recovery under common law, the Tort Claims Act specifically bars recovery by trespassers. Section 8542(b)(3) states: "The following acts by a local agency or any of its employees may result in ... liability ...: The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency...." 42 Pa.C.S. § 8542(b)(3). Therefore, it is obvious that, as a trespasser, Healy's estate would not be allowed recovery.

Even if we were to assume that Healy were not a trespasser, recovery must still be barred, as the burden was on Mitchell to prove that the real estate itself was defective and that the real estate's defect caused the injuries, not merely the negligence of the City employees. *Musheno v. Lock Haven University of Pennsylvania*, 132 Pa.Commonwealth Ct. 643, 574 A.2d 129, *petition for allowance of appeal denied*, 526 Pa. 643, 584 A.2d 324 (1990).

In the instant matter, there was not sufficient testimony that the defect in the real estate was the proximate cause of the tragic death. While Mitchell's expert offered testimony that there was a defect in the design of the pool, there is no evidence of record that the alleged defects were the cause of Healy's drowning. Our review of the record indicates that Healy dove into the pool to help his six-year old niece, who was struggling in the water. The young girl testified that she saw her uncle dive into the pool, surface and then go underneath the water again. She was helped from the pool by someone else and then asked about her uncle, who was found at the bottom of the pool.

Testimony by a paramedic who treated Healy at the scene indicated that this sad incident appeared to be a "simple drowning." The paramedic examined Healy and found no evidence of head trauma. He found no deformity of the spine, no bump on the head, and no clear fluid coming from the ears or nose. He found no cuts or bruises, nor anything to indicate that Healy injured himself by being in the water.

Mitchell's expert testified that he did not know why Healy, an experienced swimmer, drowned. The hospital report indicated that there was no evidence of head trauma. There was no autopsy performed when Healy died, five months later. The death certificate indicates that the cause of death was cardiorespiratory arrest, due to sepsis, due to pneumonia, all of which were related to "anoxia—encephalopathy secondary to drowning." Based on a review of the record, we conclude that Mitchell has failed to show a connection between the alleged defect in the pool and Healy's unexplained drowning.

Finally, Mitchell alleges that the City was negligent in failing to repair the hole in the fence and that this hole was the proximate cause of Healy's injury and subsequent death. Again, this argument fails because the hole in the fence was not the cause of Healy's drowning. The authorities are clear in holding that a defect in the real estate has to actually cause the injury for there to be liability on the

part of the landowner. *Gardner v. Conrail*, 524 Pa. 445, 573 A.2d 1016 (1990).[4]

Accordingly, because the evidence adduced at trial indicated that Healy was a trespasser and, because no testimony was introduced to establish that any alleged defect in the real estate was the proximate cause of death, the grant of directed verdict by the trial court is affirmed.

## ORDER

AND NOW, this 13th day of August, 1991, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.

BYER, J., concurs in the result only.

---

**4.** In *Gardner,* consolidated with *Lynch v. National Railroad Passenger Corporation (Amtrak),* the Supreme Court held that the City could not be held liable for injuries of two boys who climbed through holes in City-owned fences and who were subsequently injured by trains on neighboring properties. The rationale for the court's decision was the same in both cases: The holes in the fences were not the proximate causes of the boys' injuries. In these cases, the children were not injured by the holes in the fences themselves; they merely passed through them.