**Littissia WILSON, Appellant,**

v.

**The NORRISTOWN AREA SCHOOL DISTRICT and Mr. John Meissner.**

**No. 1986 C.D. 1999.**

Commonwealth Court of Pennsylvania.

Argued March 7, 2000.
Decided Sept. 7, 2001.
Reargument/Reconsideration
Denied Nov. 19, 2001.

Richard W. Rogers, Norristown, for appellant.

John M. Donahue, Philadelphia, for appellees.

Before DOYLE, President Judge, KELLEY, Judge, and NARICK, Senior Judge.

DOYLE, Judge.

Littissia Wilson appeals from an order of the Court of Common Pleas of Montgomery County, that denied her motion for post-trial relief.

Wilson was a 14–year–old student at the East Noritton Middle School and a member of the school's field hockey team. On October 21, 1993, Wilson was participating in outdoor field hockey practice; however, when it began to rain, Wilson's coach, John Meissner, moved the practice indoors. Coach Meissner directed the team to perform a relay tag drill, which required Wilson and her teammates to race on opposite interior staircases and run through the halls of the school building. During the drill, Wilson was running down a staircase when she lost her footing, stumbled down four or five stairs, and fell to the floor, sustaining a fractured jaw, and injuries to her face and mouth.

On August 25, 1994, Wilson, by her parent and natural guardian, Richard Wilson, filed a complaint against the Norristown Area School District (the District) and Coach Meissner. The complaint alleged, among other things, that the District created an unreasonable risk of harm to Wilson through the use of the stairs for the relay tag drill, and that the District engaged in negligent conduct in connection with the care, custody, and control of real property.

At a subsequent jury trial in October of 1999, after Wilson presented her case in chief, the trial judge granted a compulsory

nonsuit against her and in favor of both defendants, the School District and Coach Meissner. Wilson testified at the trial that, *inter alia,* Coach Meissner directed her and her teammates to engage in a competitive relay tag drill in the school building, and she explained how her injuries occurred:

Q. Tell us what happened just before or as you fell?

A. I was coming down [the stairs], and I was running really fast, and the girl was reaching up for me [waiting for the tag], and I started reaching out for her, and I fell. I was up about four steps at that time, I guess, four or five maybe.

(Notes of Testimony (N.T.), 10/14/98, at 16; Reproduced Record (R.R.) at 264a.) Wilson's testimony was augmented by the testimony of Latisha Bazemore, a fellow student, teammate, and eyewitness to Wilson's injury. Bazemore testified that the relay drill was a race and, during that activity, she saw Wilson fall from the steps and hit the floor.

Wilson also presented the testimony of Norman Goldstein, Ph.D., P.E., a forensic safety engineer, who testified that he "found nothing wrong with the construction of the stairs" where Wilson was injured, and he described the stairs as "perfectly good and perfectly safe *when used in a normal fashion.*" (N.T., 10/15/98, at 20; R.R. at 392a.) (Emphasis added.) Dr. Goldstein opined that the stairs were well designed for normal use, but were dangerous when used for relay races. On cross-examination, Dr. Goldstein further explained:

Q. [T]hese steps are as good as they get, aren't they?

A. They're good steps, just not for running.

Q. They're well constructed?

A. No argument.

Q. Brightly lit?

A. No argument about any of that.

Q. Diamond plate with grits?

A. Diamond plate with grits.

. . . .

Q. And the stairs, in and of themselves, just the stairs, in and of themselves, are not dangerous.

A. That is correct, when used in a normal manner.

Q. And no defects in these steps, in and of themselves, as constructed, according to the Building Code?

A. That is correct.

(N.T., 10/15/98, at 41–42; R.R. at 413–14.) Dr. Goldstein also drafted a written report, which provides:

These stairs are well designed and in good condition. They are not the problem. . . .

. . . .

It is my professional opinion to a reasonable degree of engineering and scientific certainty ... that the accident site ... constituted a hazard when used for races. It is dangerous to run up and down a flight of stairs. This danger was exacerbated by requiring the runners to tag a team mate at the base of the stairs. . . . It is also my opinion that the individual in charge of the youngsters was directly responsible for this action which was the result of poor judgment.

(Report of Dr. Goldstein, Exhibit P–8, at 2–3.)

Wilson also called Coach Meissner, as if on cross-examination, who testified that he did not direct the team to run on the stairs and that he told the students that they had to take every step and hold the handrail.

The trial court granted the compulsory nonsuit on the grounds that Wilson (1) failed to establish a statutory or common law cause of action, and (2) failed to bring

an action that was within the real estate exception to governmental immunity under Section 8542(b) of the Judicial Code, 42 Pa.C.S. § 8542(b).

Wilson filed a post-trial motion seeking a new trial, and the Common Pleas Court denied the motion explaining:

> [T]he Court ... reached the logical conclusion that coach Meissner's conduct in instructing the field hockey team to run a tag relay race on the stairs ultimately concerned the issue of Mr. Meissner's supervision and that Ms. Wilson's injuries were not 'directly related to the condition of the property.' Had there been some actual defect of or on the stairs which caused Ms. Wilson to fall, perhaps this Court may have reached a different result. However, there was no such defect. This fact was confirmed by the testimony of Plaintiff's expert as well as Ms. Wilson herself. In short, Plaintiffs failed to demonstrate to the Court how or why the factual circumstances of this particular claim could be attributed to anything other than coach Meissner's purported negligent supervision of the ... field hockey team....

(Common Pleas Court opinion at 25.) (Citation omitted.) This appeal followed.

On appeal, Wilson contends that the Court erred in concluding that, in order to have a claim within the real estate exception to governmental immunity, she had the burden to show that her injuries were caused by a defect in the real property itself. Wilson further contends that the Common Pleas Court erred in granting a compulsory nonsuit, because (1) she presented evidence relating to the negligence of Coach Meissner in relation to the care, custody, or control, of the District's real estate, (2) she established a cause of action for negligence under common law, and (3) Coach Meissner testified and raised the defenses of assumption of risk and contrib-

utory negligence by his testimony in answering questions put to him by his own counsel, so the defense thereby introduced some testimony, and accordingly the entry of a compulsory nonsuit was not procedurally proper.

 Compulsory nonsuit is properly granted when the trial court, viewing the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiff, and resolving all conflicts in the plaintiff's favor, determines that a jury could not reasonably conclude that the elements of the plaintiff's cause of action have been established. *Boyer v. City of Philadelphia*, 692 A.2d 259 (Pa. Cmwlth.1997). Further, a nonsuit may be entered only in a clear case, where the facts and circumstances lead to a single conclusion: the absence of liability. *Id.*

We need only address the one issue that Wilson raises and, because we find that Wilson failed to establish that the facts are within any exception to the shield of governmental immunity, the judgment of Common Pleas is affirmed.

 While local agencies are generally immune from suit, liability may be imposed where (1) damages would be recoverable at common law or under a statute creating a cause of action if the injury were caused by a person not protected by immunity, and (2) the claim falls within one of the statutory exceptions to governmental immunity in Section 8542(b) of the Judicial Code, 42 Pa.C.S. § 8542(b). *Mitchell v. City of Philadelphia*, 141 Pa. Cmwlth. 695, 596 A.2d 1205 (1991). Section 8542(b) of the Judicial Code provides, in relevant part, as follows:

> **(b) Acts which may impose liability.—** The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> . . . .

(3) *Real property.*—The care, custody or control of real property in the possession of the local agency....

Because the Legislature intended to insulate government agencies from liability, the exceptions to immunity are to be narrowly construed against injured plaintiffs. *Gray v. Logue,* 654 A.2d 109 (Pa.Cmwlth. 1995), *petition for allowance of appeal denied,* 541 Pa. 628, 661 A.2d 875 (1995).

Wilson argues that the Common Pleas Court's governmental immunity analysis was flawed because it required her to demonstrate that she was injured by a defect in or a condition on the stairs itself. She asserts that this analysis is contrary to this Court's decision in *Hanna v. West Shore School District,* 717 A.2d 626 (Pa.Cmwlth. 1998).

In *Hanna,* the plaintiff sued a school district for injuries caused by an accumulation of water on its real property. We initially determined that the school district was immune from suit for the reason that the plaintiff was injured by water on the real estate and not by the real estate itself; however, the Supreme Court reversed and remanded the case [1] for further consideration in light of its decision in *Grieff v. Reisinger,* 548 Pa. 13, 693 A.2d 195 (1997).[2] On remand, we applied *Grieff* and stated:

*Grieff* is significant in that it represents a radical departure from the governmental immunity analysis previously set forth in a long line of appellate decisions in this Commonwealth. Yet, we can only surmise from the *Grieff* decision ... that, for governmental immunity purposes, it is no longer of any consequence that the injury does not result from a defect in, or condition of, the real property itself....

*Hanna,* 717 A.2d at 629 (footnote omitted.) Therefore, we concluded that the school district was not immune under the real property exception and remanded the matter for trial.

Recently, however, the Supreme Court has again revisited the area of the law regarding immunity in *Jones v. Southeastern Pennsylvania Transportation Authority,* 565 Pa. 211, 772 A.2d 435 (2001), which concluded (a) the "on/of" distinction used by this Court as a short hand version to reflect the conditions in Section 8542(b)(7) was "problematic" and therefore rejected its use as a cryptic expression of the law, and (b) the real estate exception to sovereign immunity and the sidewalk exception to governmental immunity are analytically the same.

In response, the District argues that *Grieff* and *Hanna* are inapplicable here

---

**1.** *Hanna v. West Shore School District,* 548 Pa. 478, 698 A.2d 61 (1997).

**2.** Prior to our Supreme Court's decision in *Grieff,* we required a plaintiff to prove that his or her injuries were caused by a defect of the real property itself to hold a local agency liable under the real property exception, and we rejected claims where an object or substance *on* the property injured the plaintiff or where the property merely facilitated the injury. *Snyder v. North Allegheny School District,* 722 A.2d 239 (Pa.Cmwlth.1998), *appeal discontinued,* 558 Pa. 613, 736 A.2d 606 (1999). This was often referred to as the "on-of distinction."

The Supreme Court, however, moved away from that analysis in *Grieff.* In that case, the plaintiff, Marlene Reisinger, was injured when paint thinner on the floor of a fire station ignited, seriously injuring her. Reversing this Court's decision, which had rejected the plaintiff's claim on the ground that her injury was not caused by the property itself, the Supreme Court held that the real property exception to governmental immunity applied because the plaintiff's injuries were caused by the local agency's *negligent care* of the real estate.

because Wilson failed to present evidence showing the existence of any defect in the stairs or any negligence on the part of the District with regard to the care, custody or control of the real property. Instead, the District asserts that this case involves the negligent care, custody and control *of students*, not real property, and that Wilson's case amounts to a claim of negligent supervision. We must agree with the District.

■ The Supreme Court in *Jones*, while immediately concerned with SEPTA's motion for summary judgment based on sovereign immunity, emphasized that, for purposes of the real estate exception to governmental immunity, a municipality is liable for harm caused by the negligent care, custody or control *of its real property*. Our review of the record reveals that the evidence presented by Wilson does not indicate the existence of any defect in the real property or any negligence by the District in the care, custody or control of its property. There is no evidence that there was an intrinsic defect in the stairs, or an object or substance on the stairs, which caused or contributed to Wilson's fall. In fact, Wilson's expert, Dr. Goldstein, concluded that the steps were perfectly good and safe and free of any defect. Dr. Goldstein opined that the steps were not suitable for the relay race[3] and he specifically stated in his report that the "individual in charge of the youngsters," Coach Meissner, "was directly responsible for the action and exhibited poor judgment." (Exhibit P–8 at 3.) Neither Wilson nor Bazemore attributed Wilson's injury to the real property, but rather testified that Coach Meissner directed them to engage in a relay tag drill and, while running fast down the steps, Wilson lost her footing and fell. Hence, in our view, all of the evidence presented by Wilson points to Coach Meissner's negligent supervision of the hockey team as the cause of Wilson's injuries, and not the District's real property or its care of the property.

This Court has held that the negligent supervision of students is outside the real property exception to governmental immunity. In *Mooney by Mooney v. North Penn School District*, 90 Pa.Cmwlth. 7, 493 A.2d 795 (1985), a child participating in a simulated hostage crisis engineered by her teacher fell down some steps and injured her mouth. We rejected plaintiff's argument that the injury was within the scope of the real property exception to governmental immunity, reasoning as follows:

> Here, the 'action or activities' complained of was not ... the unsafe condition of the school's steps, but rather the failure of the school district properly to supervise the activities of the students. In *Robson v. Penn Hills School District*, ... [63 Pa.Cmwlth. 250], 437 A.2d 1273 (1981), a trespass complaint was brought on behalf of a twelve-year-old boy who was injured when struck in the eye by a pencil thrown by a classmate in a classroom unattended by the teacher. There we held that the student could not recover damages from the school because the 'action or activities' complained of were, as here, the failure to supervise students and *'that it would be total distortion of [the statute] to allow the supervision, or lack of supervision of school children to fall within the scope of care, custody and control of real property.'*

*Mooney*, 493 A.2d at 797 (emphasis added). *Accord Farber v. Pennsbury School Dis-*

---

**3.** Dr. Goldstein did not opine that the steps should have been designed to accommodate running or races. We also note that, contrary to the averments in Wilson's complaint, the evidence did not show that indoor running was a regular and permitted use of the real property.

*trict,* 131 Pa.Cmwlth. 642, 571 A.2d 546 (1990) (injuries allegedly caused by the negligent supervision of a race by school district employees was outside the real property exception to governmental immunity; the exception is unavailable to plaintiffs who sue under the theory of negligent supervision of students).

The legal theory underlying *Mooney* and *Farber* was recently reaffirmed in *Tiedeman v. City of Philadelphia,* 732 A.2d 696 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 562 Pa. 678, 753 A.2d 823 (2000). In that case, an employee of the City assaulted the plaintiff on City-owned property. Thereafter, plaintiff filed suit asserting that the City was negligent for failing to supervise and control its employee; the trial court, however, dismissed plaintiff's complaint. On appeal to this Court, plaintiff argued that *Grieff* expanded the real property exception to include negligent and intentional acts committed "in the context of real property," and, accordingly, that the City's negligent supervision of its employee was within the exception to immunity. We rejected that interpretation of *Grieff,* holding that a claim under the real property exception must arise from the property itself, or the care, custody or control of it, and that the employee was a human being, not real estate. In deciding this matter we observed, quoting *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), that the real estate exception is unavailable to those whose claim of negligence consists of a failure to supervise students.

The analysis in *Tiedeman, Mooney,* and *Farber* is completely consistent with *Jones.* Although *Jones* generally rejected the on/of distinction in immunity matters, it did not thereby expand the scope of the real estate exception to government immunity to include injuries resulting from the negligent supervision of students.

In light of the above, viewing the evidence and all reasonable inferences arising from it in the light most favorable to Wilson, we conclude that Wilson did not present evidence showing a claim within the real property exception to governmental immunity. Therefore, we hold that the Common Pleas Court properly granted the District's motion for nonsuit[4] and properly denied Wilson's motion for a new trial.

Accordingly, the Common Pleas Court's order is affirmed.[5]

### ORDER

**NOW,** September 7, 2001, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby affirmed.

---

**4.** Wilson's argument that it was procedurally improper for the Common Pleas Court to enter nonsuit, because Meissner, a defendant below, presented evidence on the defenses of consent, assumption of risk, and contributory negligence is unavailing. Our review of the record reveals that Wilson did not specifically argue in her post-trial motion that nonsuit was procedurally improper because Meissner presented a defense. Hence, the issue is waived. *Burrell Education Association v. Burrell School District,* 674 A.2d 348 (Pa. Cmwlth.1996).

**5.** Because of our disposition of this matter, we need not reach Wilson's remaining issues.