# Erb v. Greenmount Community Fire Co.

*Ralph D. Oyler,* for plaintiffs.
*Michelle D. Wendt,* for defendant.

GEORGE, *J.,* August 13, 2003—In this negligence action, the defendant, Greenmount Community Fire Company Inc. asks the court to grant summary judgment in its favor based upon the immunity protections set forth in the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541. For the reasons set forth below, the motion for summary judgment is granted in part and denied in part.

The plaintiffs, Elizabeth E. Erb and Roland L. Erb,[1] allege that on August 5, 2001, they attended a dinner

---

1. The complaint indicates that Elizabeth E. Erb and Roland L. Erb are husband and wife. The complaint includes a count by Roland L. Erb seeking reimbursement for medical expenses and loss of companionship he suffered due to his wife's injuries. Since Roland L. Erb's claim is dependent upon the success of his wife's claim, resolution of Elizabeth E. Erb's negligence claim will be determinative of all causes

which Greenmount organized and promoted at the fire hall located at 3095 Emmitsburg Road, Gettysburg, Pennsylvania. While at the function, Elizabeth E. Erb tripped and fell while moving between various tables. As a result of her fall, she claims she suffered a variety of injuries including fractures to her femur and humerus. Erb filed suit against Greenmount alleging the following negligent conduct:

"(a) In placing the tables too close together;

"(b) In placing too many chairs at each table;

"(c) In locating the plaintiff too far from the serving area thus requiring plaintiff to ambulate between chairs and tables;

"(d) In failing to order the serving of the meals in such a way as to allow plaintiff to proceed to the serving area without obstruction;

"(e) In allowing the fire hall to be overcrowded with patrons;

"(f) In failing to properly organize and serve the meals;

"(g) In causing and/or permitting the dangerous, hazardous, and unsafe condition to exist between the tables and chair legs;

"(h) In otherwise failing to exercise that regard and care for the rights and safety of plaintiff required of defendant under the law." Erb's complaint, ¶8.

After the close of pleadings, Greenmount moved for summary judgment.

---

of action in the complaint. See generally, *Darr Construction Co. v. W.C.A.B. (Walker),* 552 Pa. 400, 408, 715 A.2d 1075, 1080 (1998).

Summary judgment may be granted in cases where the record clearly shows that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Rush v. Philadelphia Newspapers Inc.*, 732 A.2d 648, 650 (Pa. Super. 1999). Only when the facts are so clear that reasonable minds cannot differ may a trial court properly enter summary judgment. *Basile v. H & R Block Inc.*, 563 Pa. 359, 365, 761 A.2d 1115, 1118 (2000). The court must review the record in a light most favorable to the non-moving party accepting as true all well-pleaded facts and giving the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Winwood v. Bregman*, 788 A.2d 983, 984 (Pa. Super. 2001). Greenmount's motion for summary judgment does not challenge the ability of Erb to establish the elements of negligence but rather raises governmental immunity as an affirmative defense.

Pursuant to the Act, local agencies are shielded from liability for damages on account of any injury to a person or property caused by any act of the local agency or its employees. 42 Pa.C.S. §8541. A "local agency" is defined under the Act as a "government unit other than the Commonwealth government." 42 Pa.C.S. §8501. Our appellate courts determined that volunteer fire companies are included within the definition of a "local agency" if the fire company was created pursuant to relevant law and is legally recognized as the official fire company for a political subdivision. *Kniaz v. Benton Borough*, 164 Pa. Commw. 109, 114-15, 642 A.2d 551, 554 (1994). Once this threshold is established, volunteer fire companies are entitled to governmental immunity "even when

they are not engaged in fire-fighting activities." *Guinn v. Alburtis Fire Co.,* 531 Pa. 500, 501, 614 A.2d 218, 220 (1992).

Instantly, Erb concedes that Greenmount is a local agency for the purpose of the Act. Indeed, substantial evidence in the record supports the conclusion that Greenmount is a legally recognized fire company which provides fire protection services for Freedom Township, Adams County, Pennsylvania. See generally, Greenmount's motion for summary judgment, exhibits A-D.

Concluding that Greenmount is a local agency is not, however, conclusive of the issue before the court. Erb argues that an exception to the Act allows the cause of action to proceed. Specifically, Erb relies upon the "real property" exception to the Act as a basis to justify piercing the shield of governmental immunity.

Erb is correct that there are a number of exceptions to the blanket immunity a local agency enjoys. Among them is an exception related to the care, custody and control of real property. The relevant portion of the Act provides:

"(b) *Acts which may impose liability.*—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

"(3) *Real property.*—The care, custody or control of real property in the possession of the local agency . . . ." 42 Pa.C.S. §8542(b)(3).[2]

---

2. Although the Act specifies eight exceptions to the immunity a local agency enjoys, a thorough review of the Act indicates that the "real property" exception is the only exception having arguable merit. Other exceptions include vehicle liability; care, custody or control of

When applying this exception to the case at bar, it is important to keep in mind our appellate courts' instruction that the legislature intended the Act to insulate government agencies from liability, thus, the exceptions to immunity are to be narrowly construed against injured plaintiffs. *Wilson v. Norristown Area School District,* 783 A.2d 871, 875 (Pa. Commw. 2001).

Despite the general admonition to narrowly construe exceptions to the Act, interpretation of the applicability of the real property exception has expanded since the Act's genesis in 1980. Early appellate cases consistently held that the real property exception was only applicable to those cases where "the artificial condition or defect of the land *itself* causes the injury . . . ." *Mascaro v. Youth Study Center,* 514 Pa. 351, 363, 523 A.2d 1118, 1124 (1987) (emphasis in original); *Snyder v. Harmon,* 522 Pa. 424, 433, 562 A.2d 307, 311 (1989) (noting that applicability of the exception requires that the dangerous condition must derive, originate from or have as its source the real property); *Frank v. SEPTA,* 96 Pa. Commw. 221, 224-25, 506 A.2d 1015, 1017 (1986) (noting that a negligent act complaint must be directly related to the condition of the property). These cases instructed that analysis of issues related to the real property exception focused

---

personal property; trees, traffic controls and street lighting; utility service facilities; streets; sidewalks; and care, custody or control of animals. See generally, 42 Pa.C.S. §8542(b). Although at first glance, one might conclude that the exception related to the care, custody or control of personal property is applicable, further reading of the language of that section limits liability to the care, custody or control of the personal property of others and limits recoverable damages to property loss. As such, it is clearly inapplicable to a personal injury claim.

on the relationship between the real property and the dangerous condition which resulted in the injury.

As more cases involving the real property exception attracted appellate attention, a standard for analyzing whether the defect arose from the land itself developed. In *Canon-McMillan School District v. Bioni,* 127 Pa. Commw. 317, 561 A.2d 853 (1989), the Commonwealth Court adopted the Supreme Court's language in enunciating this standard:

"Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty. . . . Second, those which are so annexed to the property, that they cannot be removed without material injury to the real estate or to themselves; these are realty. . . . Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels . . . , or the property to which they are annexed; these become part of the realty or remain personalty, depending on the intention of the parties at the time of annexation. . . ." *Id.* at 320, 561 A.2d at 854 (quoting *Clayton v. Lienhard,* 312 Pa. 433, 436-37, 167 A. 321, 322 (1933)).

Based upon this analysis, appellate courts uniformly held that the real property exception was inapplicable to instances where the alleged negligence stemmed from personal property located on the realty. *Kniaz,* cited above (concluding fire company immune from suit when picnic table that was not fastened to real property overturned); *DeRitis v. City of Philadelphia,* 136 Pa. Commw.

244, 582 A.2d 738 (1990) (concluding city immune from suit where temporary bleachers collapsed); *Hawkins v. City of Harrisburg,* 120 Pa. Commw. 369, 548 A.2d 399 (1988) (concluding city immune from suit based upon improperly erected temporary scaffolding). Moreover, the real property exception, since it relates to the conditions of the realty, was universally held to be unavailable where the alleged negligence consisted of the failure to adequately supervise persons on the property. *Frank v. SEPTA,* cited above; *Davies v. Barnes,* 94 Pa. Commw. 145, 503 A.2d 93 (1986); *Messina v. Blairsville-Saltsburg School District,* 94 Pa. Commw. 100, 503 A.2d 89 (1986).

As recently as 1995, the Pennsylvania Supreme Court adhered to the rule that the real property exception was applicable only where a defect of the land itself caused the injury. *Finn v. City of Philadelphia,* 541 Pa. 596, 664 A.2d 1342 (1995). *Finn* considered whether immunity applied in situations where injuries to the plaintiff were caused when the plaintiff slipped as a result of a foreign substance deposited on an otherwise properly constructed and designed government sidewalk.[3] In holding the Act barred the plaintiff's cause of action because the

---

3. Although *Finn* involved analysis under the sidewalk exception to the Act, 42 Pa.C.S. §8542(b)(7), *Finn* analyzed the exception by considering case law developed under the real property exception, 42 Pa.C.S. §8542(b)(3). *Finn,* cited above. This analysis was consistent with appellate authority which essentially recognized the indistinguishable subject matter of these sections. See *Kiley by Kiley v. City of Philadelphia,* 537 Pa. 502, 645 A.2d 184 (1994). Since *Finn,* however, the Supreme Court has retreated from an identical interpretation of these two sections. See *Jones v. SEPTA,* 565 Pa. 211, 223, 772 A.2d 435, 442 (2001); *Kilgore v. City of Philadelphia,* 553 Pa. 22, 29 n.6, 717 A.2d 514, 518 n.6 (1998).

plaintiff's claim lacked proof that there was a defect "of the sidewalk itself," *id.* at 605, 664 A.2d at 1346, the court reasoned that the dangerous condition was *"on"* the sidewalk, not *"of"* the sidewalk and, thus, insufficient to trigger an exception to the Act.

This fairly stable appellate authority became unsettled in *Grieff v. Reisinger,* 548 Pa. 12, 693 A.2d 195 (1997). In *Grieff,* the Supreme Court considered the applicability of governmental immunity to a claim of negligence for damages suffered as a result of a volunteer fire company's member pouring paint thinner onto the floor of the fire station. The volunteer was attempting to remove paint from the floor near the kitchen area of the fire station. While doing so, the paint thinner flowed underneath a nearby refrigerator igniting a fire. The flame traveled along the course of the paint thinner to an area where the victim was standing. Flames then engulfed the victim and she sustained severe injuries. The court held that summary judgment on the theory of governmental immunity was inappropriate under those circumstances. Basing its decision on the Act's plain language, the court reasoned that the volunteer was "caring" for the real property when the negligent act occurred. In reaching this conclusion, the court stated *Mascaro* and its progeny, which held that a defective real property must cause and not merely facilitate injury, were intended to apply only in situations where third parties caused the harm. *Id.* at 197. Clearly, *Grieff* "is significant in that it represents a radical departure from the governmental immunity analysis previously set forth in a long line of appellate decisions . . . ." *Hanna v. West Shore School District,* 717 A.2d 626, 629 (Pa. Commw. 1998). Subsequent appel-

late cases interpreting *Grieff* concluded that applicability of the real property exception no longer requires that "the instrumentality causing harm be 'of' the real estate in the sense of being affixed to it." *Martin by and through Martin v. City of Philadelphia,* 696 A.2d 909, 912 (Pa. Commw. 1997); *Hanna,* 717 A.2d at 629 (noting that for governmental immunity purposes it is no longer of any consequence that the injury does not result from a defect in, or condition of, the real property itself).

Following *Grieff,* the Pennsylvania Supreme Court revisited this area of law in *Kilgore v. City of Philadelphia,* 553 Pa. 22, 717 A.2d 514 (1998). The *Kilgore* court confirmed that the Act did not preclude a suit for dangerous conditions created on the local agency's property through the negligence of the local agency's agents. *Id.* at 29, 717 A.2d at 517. In *Kilgore,* the plaintiffs filed suit against the City of Philadelphia for the city's failure to remove ice and snow following a snowstorm. They claimed that the real estate exception applied since the real estate was in the care, custody and control of the city. In reversing the trial court's grant of summary judgment based upon governmental immunity, the court relied upon *Crowell v. City of Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992), for the proposition that the real property exception attached liability to the local agency for the manner in which the agency maintained its property.[4] Based upon these decisions, it seems clear that the

---

4. In *Crowell,* the plaintiffs filed a suit against the city as a result of damages a vehicle accident caused. The plaintiffs alleged that the accident occurred when city employees wrongly placed a traffic control device which directed traffic to turn left. Unfortunately, the road actually turned to the right. The accident occurred when a third-party driver

Supreme Court has abandoned the principle that applicability of the real property exception requires that the defect be "of" the property.[5]

Navigating through the changing landscape of appellate authority, I find the following direction: (1) the real property exception is applicable where the dangerous condition arises from the real property itself or any permanent attachments to it, *Tackett v. Pine Richland School District,* 793 A.2d 1022, 1024 (Pa. Commw. 2002); (2) the real property exception is applicable where injuries result from the local agency's negligent care of the real property, *Grieff,* cited above; (3) the real property exception applies where the local agency is negligent in

---

mistakenly followed the traffic control device directly into the lane of travel of the plaintiffs' vehicle. The plaintiffs pursued an exception to the Act under section 8542(b)(4) (relating to trees, traffic controls and street lighting). The city's claim that the suit was precluded by immunity focused on the argument that a third-party driver jointly caused the plaintiff's injury. The city did not contest applicability of the traffic control exception on any other basis. Importantly, in addressing the issue, the *Crowell* court noted that it granted allocatur for the limited purpose of addressing the applicability of section 8542(b)(4) in light of the *Mascaro* decision. *Crowell,* 531 Pa. at 405, 613 A.2d at 1180. Nevertheless, *Kilgore* cited *Crowell* for the proposition that the grant of immunity does not protect a local agency from liability for the negligent acts of its employees occurring on city property. *Kilgore,* 553 Pa. at 27, 717 A.2d at 517. Although this extension of *Crowell* may go beyond the ruling in that case, I am bound by the appellate authority set forth in *Kilgore.*

5. In his dissenting opinion in *Kilgore,* Justice Castille opined:

"Although *Finn* . . . was decided less than four years ago, the majority has *sub silentio* overruled it, and in so doing, has abandoned the principle of *stare decisis.* As I believe that we are constrained to adhere to the holding of *Finn* under the principle of *stare decisis,* I respectfully dissent." *Kilgore,* 553 Pa. at 30, 717 A.2d at 518 (Castille, J., dissenting). (emphasis in original)

keeping the real property safe, *Kilgore,* cited above; *Hanna,* cited above; (4) the real property exception does not apply where the damages result solely from a third party's negligent acts while on the real property of the local agency, *Mascaro,* cited above; (5) the real property exception does not apply to the negligent supervision of others on the real property, *Wilson,* 783 A.2d at 876; and (6) the real property exception does not apply to injuries resulting from the dangerous condition of personalty located on, but not attached to, the real property of the local agency, *Blocker v. City of Philadelphia,* 563 Pa. 559, 562, 763 A.2d 373, 375 (2000). With these lessons in mind and following our appellate courts' admonition that exceptions to the Act are to be narrowly construed against the plaintiff, I now turn to the specific allegations in Erb's complaint.

I find that allegations of placing tables too close together and placing too many chairs at each table are similar to the situations in *Grieff* and *Kilgore.* Erb's complaint, ¶¶8a, 8b. Thus, the question of whether a dangerous condition exists on real property in Greenmount's possession is a question of fact for the jury. See *Kilgore,* 553 Pa. at 29, 717 A.2d at 517 (citing *Bendas v. Twp. of White Deer,* 531 Pa. 180, 611 A.2d 1184 (1992)). Accordingly, summary judgment in regard to these allegations will be denied.

On the other hand, summary judgment will be granted in regard to the remaining allegations of negligence. Claims related to the dangerous or unsafe condition of the tables and chair legs are directed at the dangerous condition of personalty and, thus, not encompassed within the real property exception. Erb's complaint, ¶8g;

see *Blocker,* cited above. Greenmount's alleged failure in properly organizing and serving the meals are similar to the negligent supervision which our appellate courts rejected as a basis for triggering applicability of the real estate exception. Erb's complaint, ¶¶8c, 8d and 8f; see generally, *Wilson,* cited above. Finally, permitting too many patrons on the property relates to the negligent care, custody and control of the patrons rather than the real property. Erb's complaint, ¶8e; see *Wilson,* cited above.[6]

For the foregoing reasons, the attached order is entered.

## ORDER

And now, August 13, 2003, defendant Greenmount Community Fire Company's motion for summary judgment is granted in part and denied in part. Summary judgment is granted in favor of the defendant in regard to paragraphs 8c, 8d, 8e, 8f, 8g and 8h of the plaintiffs' complaint. The defendant's motion for summary judgment in regard to paragraphs 8a and 8b of the plaintiffs' complaint is denied.

---

6. Erb alleges through boilerplate language that Greenmount failed to care for their rights and safety required under law. Erb's complaint, ¶8h. This allegation lacks the specificity necessary to fit within any exception under the Act and, therefore, will be stricken. See generally, *Wilson,* 783 A.2d at 875; Pa.R.C.P. 1019.