**[J-9-2018] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | |
|---|---|
| SYETA BREWINGTON, AS PARENT AND NATURAL GUARDIAN FOR JARRETT BREWINGTON, A MINOR, AND SYETA BREWINGTON IN HER OWN RIGHT | :  No. 23 EAP 2017 :<br>:  Appeal from the Order of the :  Commonwealth Court entered on :  November 14, 2016 at No. 886 CD :  2015 reversing the Order entered on :  April 27, 2015 in the Court of Common |
| v. | :  Pleas, Philadelphia County, Civil :  Division at No. 1974 November Term :  2013. |
| CITY OF PHILADELPHIA, WALTER G. SMITH ELEMENTARY SCHOOL AND THE SCHOOL DISTRICT OF PHILADELPHIA | :<br>:  ARGUED:  May 15, 2018 :<br>:<br>:<br>: |
| APPEAL OF: THE SCHOOL DISTRICT OF PHILADELPHIA | :<br>: |

## CONCURRING OPINION

**JUSTICE WECHT**                                **DECIDED:  December 28, 2018**

I join in the decision that the learned Majority reaches, and I join as well in much of its thoughtful analysis.  The Political Subdivision Tort Claims Act ("the Act")[1] does not immunize the School District of Philadelphia from suit arising from Jarrett Brewington's injuries.

I write separately and respectfully to express disapproval of this Court's decision in *Mascaro v. Youth Study Center*, 523 A.2d 1118 (Pa. 1987), a case that the Majority distinguishes, but that I would overrule.  *Mascaro* contravenes the plain wording of the Act, has forced distortions in our decisional law for decades, and should be recognized

---

[1]     42 Pa.C.S. §§ 8541-8564.

as error. Unaccountably and atextually, *Mascaro* narrowed by judicial fiat the statutory circumstances under which a governmental agency waives immunity for damages arising from its negligence with respect to the care, custody, and control of real property, manufacturing a test that transgresses the one established by the General Assembly. Instead of laboring to conform the law to *Mascaro*, we should conform the law to the statute.[2]

The Statutory Construction Act instructs:  "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."  1 Pa.C.S. § 1921(a).  Unsurprisingly, the best indication of the General Assembly's intent is the plain language of the law that it passed.  *Id.* § 1921(b).  "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning," we may not stray from its plain and obvious meaning as we chase after its "spirit."  *See, e.g., Mohamed v. Commonwealth Dep't of Transp.*, 40 A.3d 1186, 1194 (Pa. 2012).

As an exception to the general immunity from suit that local governments enjoy, *see* 42 Pa.C.S. § 8541, a local agency shall be liable for damages if:  (1) the damages would be recoverable under statute or common law from an individual who cannot claim the defense of immunity, and (2) the injury was caused by the negligent act of the agency or agency employee while acting within the scope of his office or duties.  *See id.* § 8542(a).[3]  Liability is limited to negligent acts related to the enumerated circumstances

---

[2]     As Justice Felix Frankfurter observed, "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat'l. Bank & Tr. Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting).

[3]     *See also* PA. CONST. art. I, § 11 ("All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.").

set forth in Subsection 8542(b).  Of relevance here is the real property exception, which applies to negligent acts or omissions with respect to "[t]he care, custody or control of real property in the possession of the local agency[.]"  *Id.* § 8542(b)(3).

Syeta Brewington alleged that the "plaintiff minor was engaged in gym activities when he was caused to sustain injuries as a result of a defective and dangerous condition of the premises caused directly by the actions/inactions of defendants (*i.e.* gym without safety mats)."[4]  In response to the School District's motion for summary judgment, Ms. Brewington elaborated that "the alleged defect is the wall and the construction, design and layout of the gym itself."[5]  In order to survive dispositive motions at the pleading or summary judgment phase, Ms. Brewington seemingly felt compelled to allege that the *gym wall itself* was somehow defective or dangerous.  These gymnastics of pleading evidence the unfortunate effects imposed upon litigants by *Mascaro*'s extra-textual or contra-textual narrowing of the legislature's real property exception.

*Mascaro*'s horrifying facts are reminiscent of *A Clockwork Orange.*  A juvenile offender named Claude Opher escaped from a Philadelphia detention center, met up with a confederate, and broke into a nearby home.  After the two bound and gagged Mr. Mascaro and his son, Opher's accomplice raped Mrs. Mascaro, and Opher raped and sodomized her eleven-year-old daughter for several hours.  Unable to live with the trauma inflicted upon his wife and daughter, Mr. Mascaro committed suicide.  Prior to Mr. Mascaro's suicide, the family filed an action against the City of Philadelphia and others, alleging that the detention center negligently maintained the real property in its possession, thereby facilitating Opher's escape and causing ensuing harm.

---

[4]     Complaint of Brewington at ¶ 10.

[5]     Brewington's Response to Defendant's Motion for Summary Judgment at 3 (unnumbered).

As an initial matter, this Court determined that the Mascaros alleged a claim that was cognizable at common law, and further determined that the negligence of the City and its detention center in permitting the facility to fall into disrepair was a "but-for" cause of the Mascaros' harm, thereby satisfying the requirements of Subsection 8542(a). *See Mascaro*, 523 A.2d at 1123.

Turning its attention to whether this negligent act of the City and its detention center fell into one of the eight enumerated exceptions to governmental immunity, this Court first considered whether the acts of others ever may serve as a basis for a waiver of governmental immunity. The Court looked to the language of the provision conferring governmental immunity generally, which states: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof *or any other person*." *See* 42 Pa.C.S. § 8541 (emphasis added). With little to no analysis, this Court then proceeded summarily to conclude that "any harm that *others* cause may not be imputed to the local agency or its employees." *Mascaro*, 523 A.2d at 1124 (emphasis added).

This breezy assertion ignored the allegation that the Mascaros actually raised: that the City's negligence in its care, custody, and control of its detention center property caused the family's harm. This Court unilaterally re-characterized the Mascaros' claim as one sounding exclusively in negligent supervision, as if divorced from the care of the real property itself. Proceeding then to invoke a series of decisions in which the Commonwealth Court had ruled that governmental immunity barred plaintiffs who alleged solely negligent supervision wholly unrelated to the care, custody and control of real property, the *Mascaro* Court categorically determined that recovery under the real property exception is unavailable to those "whose claim of negligence consists of a failure

to supervise the conduct of students or persons adequately." *Id.* at 1124. Further narrowing a plaintiff's ability to recover under the real property exception, and in a clear departure from the language of the statute, this Court proceeded to announce that "the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability." *Id.* (emphasis in original).

This judicial invention of limitation on recovery to circumstances in which the condition or defect of *the land itself* exclusively causes the injury is unsupported by the plain language of the real property exception. As it relates to this case, here is what the exception does require: a negligent act with respect to the care, custody and control of real property. *Mascaro*, and the jurisprudence it has spawned, is reminiscent of the same defects and concerns that afflicted *Love v. City of Philadelphia*, 543 A.2d 531 (Pa. 1988), an unfortunate precedent that we finally laid to rest in *Balentine v. Chester Water Authority*, 191 A.3d 799 (Pa. 2018). Contrary to the statutory text, *Love* judicially imposed an additional "motion" requirement upon the Act's vehicle liability exception. This requirement had no basis in the language of the statutory exception.[6] As with *Love*'s extra-textual narrowing of the vehicle liability exception, *Mascaro* "embodied an imprudent departure from the letter of the [statutory] exception in pursuit of its spirit in violation of our rules of construction." *Balentine*, 191 A.3d at 815 (Wecht, J., concurring).

The Majority notes that this Court has limited *Mascaro*'s scope, observing charitably that we "clarified its import." Majority Op. at 20 (citing *Crowell v. City of Phila.*, 613 A.2d 1178, 183-85 (Pa. 1992) (concluding that *Mascaro* does not preclude recovery on the basis of governmental immunity to claims of joint liability where the government's

---

[6]     *See* 42 Pa.C.S. § 8542(b)(1).

negligence was a substantial factor in causing the harm); and *Grieff v. Reisinger*, 693 A.2d 195, 197 (Pa. 1997) (reiterating that *Mascaro* was intended to apply only to cases in which a third party causes the harm)).[7] While diplomatic, I find the Majority's language unduly gentle. In reality, *Mascaro* remains viable only when an agency's negligence merely facilitates, but is not a causal factor, in harm caused by a third party.

The wording of the cognate real property exception to the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521-8527, highlights *Mascaro*'s jurisprudential infirmity. We have noted that the Sovereign Immunity Act and the Political Subdivision Tort Claims Act are to be read *in pari materia* inasmuch as they address the same subject matter. *See Kilgore v. City of Phila.*, 717 A.2d 514, 516 n.2 (Pa. 1998); 1 Pa.C.S. § 1932. As we interpret those statutes, we must account for differences in the language of the respective exceptions. *See* 42 Pa.C.S. §§ 8522(b)(4), 8542(b)(3). The real property exception to sovereign immunity exposes the Commonwealth to liability for damages arising out of a negligent

---

[7] The Commonwealth Court likewise has acknowledged this Court's efforts to limit *Mascaro*'s reach. In *Wilson v. Norristown Area School District*, 783 A.2d 871 (Pa. Cmwlth. 2001), the Commonwealth Court briefly discussed our decision in *Grieff*, wherein we held that the plaintiff's claim fit squarely within the real property exception because she alleged that a fire department negligently cared for its real property when a floor treated with paint thinner ignited, causing her injuries. Bowing to *Grieff* somewhat begrudgingly, the *Wilson* panel stated:

> [The Supreme Court's decision in] *Grieff* is significant in that it represents a radical departure from the governmental immunity analysis previously set forth in a long line of appellate decisions in this Commonwealth. Yet, we can only surmise from the *Grieff* decision . . . that, for governmental immunity purposes, it is no longer of any consequence that the injury does not result from a defect in, or condition of, the real property itself[.]

*Wilson*, 783 A.2d at 875 (footnote omitted) (quoting *Hanna v. West Shore Sch. Dist.*, 717 A.2d 626, 629 (Pa. Cmwlth. 1998)). This "radical departure" actually reflected this Court's studied decision to evolve away from *Mascaro*'s "artificial condition or defect" requirement and toward compliance with the words of the statute itself.

act or omission causing "*a dangerous condition* of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property." 42 Pa.C.S. § 8522(b)(4) (emphasis added). *See also id.* § 8542(b)(4) ("*A dangerous condition* of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency"); *id.* § 8542(b)(5) ("*A dangerous condition* of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way"); *id.* § 8542(b)(6)(i) ("*A dangerous condition* of streets owned by the local agency"); *id.* § 8542(b)(7) ("*A dangerous condition* of sidewalks within the rights-of-way of streets owned by the local agency"). In stark contrast, the real property exception to governmental immunity applies with respect to the "care, custody or control of real property in the possession of the local agency," *id.* § 8542(b)(3), and conspicuously omits any reference to "a dangerous condition." This is an omission wholly ignored by *Mascaro*, but it is an omission for which we must account.

Viewed holistically, the statutory scheme governing immunity articulates a relatively straightforward domain within which the real property exception applies. To wit, the real property at issue need not itself be defective, nor need it reflect negligent *design or construction*. Rather, the realty need only be the instrument of an injury that arises due to negligent acts or omissions with respect to that realty's care, custody, or control.[8] Like the floor in *Singer v. School District of Philadelphia*, 513 A.2d 1108 (Pa. Cmwlth. 1986), the wall in this case was not, itself, defective. Indeed, I have no reason to doubt that, at all relevant times, the wall was performing its job—to wit, being a wall—quite competently. Rather, the failure to pad the wall, and the gym teacher's astounding choice to *utilize the unpadded wall as a finish line*, may constitute the requisite negligence in the

---

[8] This case is not complicated by the fact of "intervening criminal acts," a circumstance which animated Justice Hutchinson's concurrence in *Mascaro*. *See Mascaro*, 523 A.2d at 1125 (Hutchinson, J., concurring).

care, custody, or control of the wall. These principles are rooted in, and give life to, the legislative intent reflected in the statutory language. In the face of this reality, *Mascaro*'s error is patent.[9]

It follows logically that the Majority is correct to hold that a separate claim of negligent supervision does not bar "application of the real property exception to independent allegations" of negligence. Majority Op. at 21. The Majority's determination is facially at odds with *Mascaro*. And well it should be. I believe that we must go just a bit further: not only may a plaintiff allege negligent supervision in a separate count without waiving the real property exception, but it must follow as well that an allegation of negligent supervision, which implicates the care, custody, or control of the real property may, itself, serve as the negligent act necessary to trigger the real property exception.

By hypothesis, freed from *Mascaro*'s shackles, Ms. Brewington could have alleged that the negligent act was the teacher's breathtaking decision to use a concrete wall as the finish line for a children's relay race.[10] To be sure, such a claim speaks in part to the teacher's supervision of the students. But, as well, it squarely implicates the care, custody

---

[9]    *See Mascaro*, 523 A.2d at 1127 (Larsen, J., dissenting) ("The damages caused outside the real property by the unleashing of the dangerous instrumentality housed on the property would be a foreseeable and predictable result of the negligent care, custody or control of the property. In the instant case, the dangerous instrumentality housed on appellants' real property was a vicious criminal, and that instrumentality was unleashed by appellants' negligent care, custody and control of the property, causing serious, foreseeable and predictable damage to persons outside of the property.").

[10]    Framing the issue as such also would eliminate the need to engage in the *Singer/Rieger* analysis and the need to wander down the peculiar taxonomic road of debating not only the necessity of wall padding, but also whether such padding should be characterized as a fixture or personalty. *See Singer v. Sch. Dist. of Phila.*, 513 A.2d 1108 (Pa. Cmwlth. 1986); *Rieger v. Altoona Area Sch. Dist.*, 768 A.2d 912 (Pa. Cmwlth. 2001). I note that the Commonwealth Court's decision in the case at bar suitably silenced this debate by abrogating *Rieger* and holding that the question of whether the real property exception applies should focus upon the cause of the injury, not upon the nature of the preventative measures that should have been provided. *See Brewington v. City of Phila.*, 149 A.3d 901, 909 (Pa. Cmwlth. 2016) (*en banc*).

and control of the District's real property by an agent of that District. Put it this way: the real property exception may apply to waive governmental immunity where the agency's negligent supervision of others with respect to the care, custody and control of real property renders the property unsafe for the "activities for which it is regularly used, intended to be used or reasonably foreseen to be used." *See Snyder v. Harmon*, 562 A.2d 307, 312 (Pa. 1989).

Exceptions to governmental immunity must be construed narrowly. *See* Majority Op. at 10-11; *Dorsey v. Redman*, 96 A.3d 332, 341 (Pa. 2014). Narrow construction of a statute does not entail judicial conjuring of limitations or pleading requirements that the General Assembly chose not to include in the statute itself. This is especially important where such an interpretation would depart from the plain meaning of the language that the lawmakers employed. *Mascaro*'s suggestion that the real property exception is applicable only when it is alleged that an "artificial condition or defect of the land *itself* causes the injury," finds no support in the language of the Act. It should be abrogated expressly.

The land itself is not at fault. The tortfeasor may be.